JAIKINS v. JAIKINS.

1. CONTEMPT—CIVIL AND CRIMINAL CONTEMPT.

    Civil contempt of the court differs from criminal contempt in that it seeks to change the respondent's conduct by threatening him with a penalty if he fails to change his behavior, while criminal contempt seeks to punish the respondent for past wrongdoing which affronts the dignity of the court.

2. SAME—CIVIL AND CRIMINAL CONTEMPT—ABILITY TO PURGE ONE'S SELF.

    A person cannot purge himself of criminal contempt since this type of contempt is based on past misconduct.

3. SAME—CIVIL AND CRIMINAL CONTEMPT—NATURE OF THE CHARGE.

    Every person, no matter how ignorant in the law he is, should be able to see by inspection of the papers in a contempt proceeding whether he is charged with civil or criminal contempt.

4. SAME—CIVIL AND CRIMINAL CONTEMPT.

    Criminal contempt is present when noncompliance with a court order has altered the *status quo* in such a way that it cannot be restored or the relief sought becomes impossible, but there is only civil contempt where the noncompliance is such

REFERENCES FOR POINTS IN HEADNOTES
[1–7] 17 Am Jur 2d, Contempt §§ 4, 5.

that the *status quo* can be restored and the relief originally sought can still be granted.

5. SAME—CIVIL AND CRIMINAL CONTEMPT—EVIDENCE.

The court must be convinced beyond a reasonable doubt by the evidence before it can make a finding of criminal contempt, and it cannot compel the party accused of contempt to be a witness against himself.

6. SAME—CIVIL CONTEMPT—ABILITY TO PURGE.

A person must be given the opportunity to purge himself of civil contempt by the performance of the act or duty and payment of the cost of the proceedings against him and damages caused by his conduct, but not including attorney's fees when the contempt consists of omission to perform some act or duty which is still within his power to perform.

7. SAME—CIVIL AND CRIMINAL CONTEMPT—ABILITY TO PURGE.

Trial court finding of contempt based on a preponderance of the testimony, *held,* a finding of civil rather than criminal contempt because of the standard of proof used and because respondent was required to testify, and reversed because respondent was given no opportunity to purge himself.

Appeal from Oakland; Beer (William John), J. Submitted Division 2 March 1, 1968, at Lansing. (Docket No. 2,530.) Decided June 26, 1968.

Plaintiff James W. Jaikins, Jr., was found guilty of contempt of court for failure to comply properly with a court order relative to child visitation rights in a divorce action. Plaintiff appeals. Reversed.

*William R. Vander Kloot,* for plaintiff.

*Marian E. Jaikins, in propria persona.*

McGREGOR, P. J. This appeal is from the trial court's finding plaintiff guilty of contempt of court for failure to carry out the court's order relative to child visitation rights granted to defendant. The plaintiff husband was granted a divorce by the Oakland county circuit court in accordance with the

order of the Michigan Supreme Court, on grounds that the defendant wife and mother was cruel to their children: Maryann, born August 1, 1955, and James, born September 24, 1956, and on other grounds not pertinent to the present issue. *Jaikins* v. *Jaikins* (1963), 370 Mich 488. On remand, plaintiff was granted custody of the children by the trial court order of January 24, 1964. The court suspended the mother's visitation rights by order of, November 30, 1964, and then re-instated such rights, February 15, 1965. On March 1, 1965, the plaintiff father petitioned to suspend again the visitation rights of the mother. Thereafter, a report from the friend of the court was received by the trial judge and on April 27, 1965, without consulting either party, the trial court issued an order scheduling visitation of the children by the mother, custody of the children remaining with the father.[1]

---

[1] "At a session of court held at the court house in the city of Pontiac, county of Oakland and State of Michigan, on Tuesday, the 27th day of April, A.D. 1965.

"Present: Honorable William J. Beer, Circuit Judge.

"This court orders the following plan of visitation in re the children, Maryann Jaikins and James W. Jaikins, III, and their mother:

"Visitation for James W. Jaikins, III:

"Sundays—May 9, May 16, May 23, 1965
    June 6, June 13, June 20, June 27, 1965
    July 11, 1965
    From 1:30 p.m. to 7:30 p.m.

"Visitation for Maryann Jaikins and James W. Jaikins, III:

"Wednesdays—June 23, June 30, 1965
    July 7, July 14, 1965
    From 10:00 a.m. until 8:00 p.m.

"All visitation, whether for vacation, overnight or otherwise, during the period from July 15, 1965, through the month of August, 1965, is left to the discretion and supervision of the friend of the court, guarded by the direction Marian E. Jaikins, mother of said children, is to have them in her custody continuously for a period of at least 10 days.

"Visitation for Maryann Margaret Jaikins and James W. Jaikins, III: (continued)

"Sundays—September 12, September 19, September 26, 1965
    October 10, October 17, October 24, October 31, 1965
    November 14, November 21, November 28, 1965
    December 12, December 19, December 26, 1965
    From 1:00 p.m. to 7:00 p.m.

On September 15, 1965, defendant petitioned the court to find the father in contempt for violating the visitation order. The court heard testimony and argument of this matter at various times from April 19 until July 5, 1966. At the conclusion of these hearings the court ruled that the plaintiff father should retain custody and that the defendant mother's visitation rights should be suspended, but that the father was in contempt of the court's order of April 27, 1965, as further expanded by a letter from the friend of the court on May 4, 1965. The court's written findings were that the father "had a responsibility to see that the visitation plan was carried out and that his failure is to the extent of being in contempt of court."

The court specified certain dates on which no visitation had occurred (May 23, June 6, June 13, June 23, June 27 and June 30, all in 1965) and suggested that there had been no visitation on certain other unspecified dates. A letter from the friend of the court dated May 4th established how and where the visitation was to occur and specified, among other things, that the children be "delivered" to the mother at Christ Church, Cranbrook, in Bloomfield Hills, Michigan.

"Thursday—December 30, 1965 at 10:00 a.m. through
"Saturday, January 1, 1966, at 8:00 p.m. (This is a special holiday visitation for the mother and her children.)
"Sundays—January 9, January 16, January 23, January 30, 1966
        February 13, February 20, February 27, 1966
        March 13, March 20, March 27, 1966
"At the will of the mother, Marian E. Jaikins, the maternal grandparents may accompany her or be present during aforesaid visitation occasions.
"During the aforesaid visitation periods, Marian E. Jaikins, the mother, shall not administer corporal punishment to either child. If there is a disciplinary problem, it should be brought immediately to the friend of the court for appropriate action and report to this court.
"Any future proceedings in this cause concerning custody or visitation with the children shall be en banc. See 370 Mich 488.
                "/s/ WILLIAM JOHN BEER,
                        Circuit Judge"

After one mutually satisfactory visitation, the record indicates a conflict of testimony as to dates and surrounding circumstances of attempts by the defendant mother to see the children. There was testimony as to the misbehavior of the children, their becoming upset, and their refusal to go with their mother. A psychiatrist testified for the plaintiff father to the effect that the mother was unsure and tense with the children, but that the father could do more to make the visits with the mother successful. The court determined from disputed allegations of the parties that the father did not carry out his part of the visitation order.

After a series of hearings, concluding on July 8, 1966, the trial court issued an opinion, the pertinent part of which reads as follows:

"I am persuaded by the *preponderance of the testimony* * * * that Mr. Jaikins did wilfully fail to comply with the order of visitation. * * *

"Specifically, there was no visitation with the boy, James W. Jaikins, III [listing six dates as set out in the order of April 27, 1965].

"The custodial parent was the father, Mr. Jaikins. He was ordered and had a responsibility to see that the visitation plan was carried out. He did not do so. I conclude that he did thwart the plan of visitation. I do not believe that he did so in an insolent manner, but that does not alter the fact that he failed to carry out the court's orders. * * *

"I do find Mr. Jaikins in contempt of court. He is sentenced to the Oakland county jail for 30 days and fined $250. He is assessed costs payable to the wife in connection with her expenses, attorney fees and so forth, $1,850." (Emphasis added.)

It is this order, filed July 21, 1966, in compliance with the foregoing opinion, that is the subject of this appeal.

The plaintiff father contends that the contempt order should not be sustained because the court decision did not specify or inform him whether the contempt proceedings were civil or criminal in nature; that the court's order of April 27, 1965, was indefinite and vague, and was erroneously expanded by the friend of the court.

Essentially, the difference between civil and criminal contempt is that the former seeks to change respondent's conduct by threatening him with a penalty if he does not change it, while the latter seeks to punish him for past misdoings which affront the dignity of the court. Criminal contempt being for past misconduct, there is no way for one so convicted to purge himself of the contempt. *In re Colacasides* (1967), 6 Mich App 298, 301, 302.[2]

"Every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether it was instituted for private litigation or for public prosecution, whether it sought to benefit the complainant or vindicate the court's authority. He should not be left in doubt as to whether relief or punishment was the object in view." *Gompers* v. *Buck's Stove & Range Co.* (1911), 221 US 418, 446 (31 S Ct 492, 55 L Ed 417).

If the contempt was criminal in nature, the plaintiff should have been advised of the potential criminal nature of the charge against him, either by having to respond to a petition independent of the originally litigated case, or at least be informed from the bench of the possibility of criminal sanctions.

"Another test of whether the contempt is civil or criminal involves consideration of subsequent con-

[2] Affirmed (1967), 379 Mich 69; application for hearing on bail denied, *Colacasides* v. *Michigan* (1967), 387 US 901 (87 S Ct 1682, 18 L Ed 2d 619).

duct—an 'after the fact' determination. It may be summarized: Where the contemnor's conduct of noncompliance with the court order has altered the *status quo* so that it cannot be restored or the relief intended becomes impossible, there is criminal contempt; however, where the contemnor's conduct of noncompliance with the court order is such that the *status quo* can be restored and it is still possible to grant the relief originally sought, there is civil contempt. See *Green* v. *United States* (1958), 356 US 165, 197, 198 (78 S Ct 632, 650, 651, 2 L Ed 2d 672, 695, 696)." *Harvey* v. *Lewis* (*Appeal re List*) (1968), 10 Mich App 709, 716, 717.

The trial court's finding of contempt was based on the *preponderance of the testimony,* the standard of proof in civil cases:

"Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty *beyond a reasonable doubt,* and cannot be compelled to testify against himself." *Gompers, supra,* 221 US 418, 444. (Emphasis added.)

In this case the trial court used the wrong standard of proof to find the father guilty of criminal contempt. In criminal contempt, the respondent retains the constitutional protection against self-incrimination. He cannot be compelled to testify. In the case at bar, the trial court stated at the close of petitioner's proofs:

"I conclude, but only in a prima facie sense, there has been a violation of this order for visitation *that requires the proofs of the custodial parent.*" (Emphasis added.)

Requiring the accused to testify is improper in criminal contempt cases.

"When the contempt consists of the omission to perform some act or duty which is still within the power of the party to perform, his imprisonment shall be terminated when he performs the act or duty * * * and pays the fine and the costs and expenses of the proceedings, which shall be specified in the order of commitment." Revised judicature act, PA 1961, No 236, § 1715(2) (CLS 1961, § 600.1715[2], Stat Ann 1962 Rev § 27A.1715[2]).

In civil contempt cases, the court may assess the accused for damages caused by his conduct, but attorney's fees and other costs of litigation are not such "damages." *Holland* v. *Weed* (1891), 87 Mich 584, 587, 588. The contempt at bar is civil rather than criminal and because it is civil contempt, the order appealed from is defective. If found in contempt, the plaintiff father must be given the opportunity in civil contempt to purge himself from the contempt, and it must be clear that he has the capacity to do so.

Accordingly, the opinion and order of the trial court holding the plaintiff in contempt of court were erroneous and are hereby vacated. Costs to plaintiff.

J. H. GILLIS and A. C. MILLER, JJ., concurred.