WATTERS v WATTERS

Docket Nos. 55598, 56408. Submitted June 17, 1981, at Lansing.—
Decided December 16, 1981.

Plaintiff, Linda D. Watters, and defendant, Dennis R. Watters,
were divorced in 1975, with plaintiff being granted custody of
the parties' one minor child. In 1980, custody of the child was
changed to defendant. Defendant took the child to Florida
during the Christmas, 1980, holiday season and remained until
January 6, 1981, in violation of the Hillsdale Circuit Court's
order granting visitation rights to plaintiff during the period.
Plaintiff petitioned the court to find defendant in contempt for
violating the visitation order, and, following a show cause
hearing, defendant was found to be in criminal contempt of
court and was sentenced to seven days in jail and ordered to
pay $100 court costs, Harvey W. Moes, J. Prior to the show
cause hearing, defendant filed a motion to modify the divorce
decree to provide for a change in the domicile of the minor
child from Michigan to Florida. The court denied defendant's
petition, Harvey W. Moes, J. Defendant appeals both the con-
tempt order and the denial of his petition for change of domi-
cile. The appeals have been consolidated. *Held:*

1. The contempt proceedings in this matter were civil in
nature and defendant should have been given an opportunity to
purge himself of the contempt by complying with conditions set
by the judge to remedy the situation. The order holding defen-
dant in contempt of court is vacated.

2. The court does not agree with the trial judge's belief that
the fact that a change in domicile may improve the quality of

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contempt §§ 5, 40.
   24 Am Jur 2d, Divorce and Separation § 754.
[2-4] 17 Am Jur 2d, Contempt §§ 4, 5.
[5, 8-10, 12-14] 24 Am Jur 2d, Divorce and Separation § 798.
   42 Am Jur 2d, Infants § 52.
   Nonresidence as affecting one's right to custody of child. 15 ALR2d
   432.
[6, 7] 24 Am Jur 2d, Divorce and Separation § 791.
[11] 17 Am Jur 2d, Contempt § 77.

life and the economic condition for the custodial parent is not a relevant consideration in determining the best interests of a child. Furthermore, the trial court erred in applying the clear and convincing evidence standard to defendant's request for a change in domicile of the minor child. A mere preponderance of the evidence establishing that it would be in the best interests of the child would be sufficient to permit removal. Finally, if defendant cannot find employment in the area where he currently resides, future disruptions in the child's homelife are likely to occur from an in-state change of residence such that plaintiff's parental relationship with the minor child would suffer much the same as if defendant were permitted to remove the child from Michigan. The order of the trial court denying defendant's motion to change the domicile of the minor child is vacated and the cause remanded for reconsideration of defendant's request in light of this opinion.

Reversed in part and remanded.

K. B. GLASER, J., dissented. He would find that the record fully supports the trial court's finding of criminal contempt, that defendant was represented by competent counsel and that any procedural errors were clearly harmless. He also supports the trial court's denial of defendant's petition for removal, expressing the belief that the enforcement of the nonremoval provisions of a judgment are best left to the sound discretion of the trial judge, whose findings should stand unless they are against the great weight of the evidence or there is a palpable abuse of discretion or a clear legal error on a major issue. He would affirm.

### OPINION OF THE COURT

1. DIVORCE — CONTEMPT — CIRCUIT COURTS — POWER TO PUNISH.

   Circuit courts have the power to punish by fine or imprisonment, or both, persons guilty of any negligence or violation of duty or misconduct in cases of disobedience of or refusal to comply with any order of the court for the payment of temporary or permanent alimony or support money or costs made in any action for divorce or separate maintenance, or any other disobedience to any lawful order, decree or process of the court (MCL 600.1701[5]; MSA 27A.1701[5]).

2. CONTEMPT — CRIMINAL CONTEMPT — CIVIL CONTEMPT.

   Proceedings for contempt are of two classes: criminal or punitive, and civil, remedial, or coercive; the former are conducted to preserve the power and vindicate the dignity of the courts and

to punish for disobedience of their orders; the latter are instituted to protect, preserve, and enforce the rights of private parties and to compel obedience to the orders, judgments, and decrees of the courts made to enforce the rights and remedies to which the courts have decided that such parties are lawfully entitled.

3. CONTEMPT — CRIMINAL CONTEMPT — CIVIL CONTEMPT.

An "after the fact" determination of whether contempt is civil or criminal involves consideration of subsequent conduct; criminal contempt arises were the contemnor's conduct of noncompliance with a court order has altered the status quo so that it cannot be restored or the relief intended becomes impossible; civil contempt arises where the contemnor's conduct of noncompliance with a court order is such that the status quo can be restored and it. is still possible to grant the relief originally sought.

4. CONTEMPT — CIVIL CONTEMPT — OPPORTUNITY TO PURGE.

A defendant in civil contempt proceedings must be afforded an opportunity to purge himself of the contempt by complying with such conditions as are set by the judge to remedy the situation.

5. PARENT AND CHILD — CHILD CUSTODY — MOTION TO REMOVE — BEST INTERESTS OF CHILD.

A trial court's decision to grant a motion by a parent who has custody of a minor child under a judgment of divorce for approval to remove the child from the State of Michigan should be based upon the best interests of the child as defined by statute (MCL 722.23; MSA 25.312[3]).

6. PARENT AND CHILD — BEST INTERESTS OF CHILD — FINDINGS OF FACT.

A trial court in a dispute over the custody of a child must make specific findings of fact on each of the statutory factors to be considered in determining the best interests of the child (MCL 722.23; MSA 25.312[3]).

7. APPEAL — BEST INTERESTS OF CHILD.

A trial court's findings of fact in determining what is in the best interests of a child in a child custody matter are accorded great weight and will be reversed only where the Court of Appeals is convinced that the great weight of the evidence favors a contrary result (MCL 722.28; MSA 25.312[8]).

8. Parent and Child — Child Custody — Removing Family — Factors to Be Considered.

A court must weigh various factors to accommodate compelling interests of all parties where a custodial parent seeks the court's approval to move his family to a place so geographically distant as to render weekly visitation by the noncustodial parent impossible and the custodial parent can demonstrate that real advantage to the family will result from the family's moving; among the factors to be considered are: (1) whether the proposed move will improve the general quality of life for the custodial parent and children; (2) whether the proposed move is inspired by a desire to defeat or frustrate visitation; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) whether the noncustodial parent's opposition to the move is intended to secure financial advantage in respect of continuing support obligations; and (5) whether a realistic substitute visitation pattern can be devised.

9. Parent and Child — Child Custody — Change in Domicile.

The fact that a change in domicile may improve the quality of life and the economic condition for a parent who has custody of a minor child under a judgment of divorce is a relevant consideration in a court's determination of whether to grant a motion by that parent for approval to remove the child from the state.

10. Parent and Child — Child Custody — Best Interests of Child — Standard of Evidence

The test to be applied to a request by a custodial parent for approval of a change in domicile of his minor child is simply whether the evidence establishes that it would be in the best interests of the child to permit removal; a mere preponderance of the evidence is sufficient to permit removal.

Dissent by K. B. Glaser, J.

11. Contempt — Nature of Proceedings.

*Contempt proceedings traditionally present a relatively simple factual issue and are decided summarily without a jury.*

12. Parent and Child — Child Custody — Motion to Remove Child.

*A trial court did not err in denying a motion by a parent who has custody of a minor child under a judgment of divorce for permission to remove the child from the state where that parent had a history of failing to abide by visitation orders while within the state and there was solid evidence to support*

*a finding that permitting the removal would be tantamount to severing the parental rights of the noncustodial parent.*

13. PARENT AND CHILD — CHILD CUSTODY — MOTION TO REMOVE CHILD.

*A trial court in ruling on a motion by a parent who has custody of a minor child under a judgment of divorce for permission to remove the child from the state should apply the following four-pronged test rather than relying upon the criteria for determining the best interests of the child as outlined in the Child Custody Act of 1970: (1) it should consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) it must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders when no longer subject to the jurisdiction of the courts of the state; (3) it must take into account the integrity of the noncustodial parent's motives in resisting the removal and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations; and (4) the court must be satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed (MCL 722.23; MSA 25.312[3]).*

14. DIVORCE — ENFORCEMENT OF JUDGMENT PROVISIONS.

*The enforcement of nonremoval provisions of a divorce judgment are best left to the sound discretion of the trial judge, whose findings should stand unless they are against the great weight of the evidence or there is a palpable abuse of discretion or a clear legal error on a major issue.*

*Parker & Hayes, P.C.* (by *Michael E. Menkes*), for plaintiff.

*Stross & Marks, P.C.,* for defendant.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and K. B. GLASER,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

T. M. Burns, P.J. The parties to this appeal were divorced on September 30, 1975. The original divorce decree awarded custody of the parties' one minor child to plaintiff but on September 18, 1980, custody was changed to defendant.

The order granting defendant custody of the child contained an extensive and detailed visitation schedule. According to the schedule, plaintiff was entitled to custody of the child from December 28, 1980, through January 4, 1981. Defendant, however, took the child to Florida and wrongfully thwarted plaintiff's visitation rights.

On December 31, 1980, plaintiff petitioned the court to find defendant in contempt for violating the visitation order. On January 13, 1981, a show cause hearing was held on plaintiff's petition. At its conclusion, defendant was found to be in criminal contempt and was sentenced to seven days in the Hillsdale County Jail and ordered to pay $100 court costs. The court further ordered that plaintiff have visitation with the minor child during the 1981 Spring vacation in lieu of the Christmas-New Year's week visitation that was denied by defendant.

Just prior to the hearing on plaintiff's petition, on January 8, 1981, defendant filed a motion to modify the divorce decree to provide for a change in the domicile of the minor child from Michigan to Florida. At the hearing on defendant's motion, which was held on February 9 and 24, 1981, defendant testified that he was currently unemployed and that his unemployment compensation had terminated on November 10, 1980. He further stated that he had been offered a job in Florida where he would earn a minimum of $5 per hour. Defendant indicated that suitable housing was available in Florida and that he had made ar-

rangements to enroll the child in a private school located approximately three miles from the home that he and his present wife hoped to occupy.

Plaintiff contested defendant's request for a change of domicile. She stated that it was her belief that a change of domicile would interfere with her visitation rights and would cause a deterioration of her relationship with the minor child. Defendant responded that he would give plaintiff four weeks of visitation in the summer as well as a week of visitation over the Christmas holidays if permitted to move the child to Florida. He agreed to pay any transportation costs involved in providing visitation and offered to post a bond to show his good faith regarding visitation.

At the conclusion of the hearing, the judge rendered an oral opinion denying defendant's petition. The judge found that defendant had not established by clear and convincing evidence that a change of domicile was in the best interests of the child. The judge noted that defendant had not shown that the move was economically necessary or beneficial and further found that the evidence which tended to show that the move was for defendant's benefit was not compelling enough to justify removal.

Defendant now appeals as of right, having been granted permission by this Court to consolidate the appeal from the contempt order and the appeal from the order denying change of domicile.

A trial judge's statutory authority to find a party in contempt for wilful violation of a court-ordered visitation schedule is grounded in MCL 600.1701(5); MSA 27A.1701(5). That statute provides that circuit courts have the power to punish by fine or imprisonment, or both, persons guilty of any negligence or violation of duty or misconduct

in cases of "disobedience of or refusal to comply with any order of the court for the payment of temporary or permanent alimony or support money or costs made in any action for divorce or separate maintenance, or any other disobedience to any lawful order, decree or process of the court".

Contempt proceedings may be either civil or criminal in nature. The distinction between criminal and civil contempt was discussed by this Court in *Harvey v Lewis,* 10 Mich App 709, 715-716; 160 NW2d 391 (1968). Quoting from the case of *In re Nevitt,* 117 F 448, 458-459, 461 (CA 8, 1902), the *Harvey* Court described the difference between criminal and civil contempt in the following terms:

"'Proceedings for contempt are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. * * * A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the

judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings. This is the nature of the case under consideration. These petitioners * * * are imprisoned only until they comply with the orders of the court, and this they may do at any time. They carry the keys of their prison in their own pockets.'

"Another test of whether the contempt is civil or criminal involves consideration of subsequent conduct— an 'after the fact' determination. It may be summarized: Where the contemnor's conduct of noncompliance with the court order has altered the *status quo* so that it cannot be restored or the relief intended becomes impossible, there is criminal contempt; however, where the contemnor's conduct of noncompliance with the court order is such that the *status quo* can be restored and it is still possible to grant the relief originally sought, there is civil contempt." (Footnotes omitted.)

Relying upon this distinction between civil and criminal contempt, defendant argues that the present proceedings were in the nature of civil contempt because their purpose was to vindicate a private right and because it was possible to restore the status quo by granting plaintiff additional visitation. Defendant contends, therefore, that the trial judge should have afforded him an opportunity to purge himself of the contempt.

On only one prior occasion has this Court reviewed contempt proceedings as applicable to a violation of a visitation order. In that case, *Jaikins v Jaikins,* 12 Mich App 115; 162 NW2d 325 (1968), the defendant-husband had been found guilty of contempt by a trial judge and sentenced to 30 days in the county jail, fined $250, and assessed costs and attorney fees. On appeal, the defendant argued that the contempt order could not be sustained because the proceeding was civil in nature and he had not been given an opportunity to purge himself. This Court agreed, noting that the trial

judge had used the preponderance of the evidence standard of proof, rather than the beyond a reasonable doubt standard, and that the defendant had never been informed of the constitutional protection against self-incrimination and had been required to testify.

Similar defects are present in the case before us. In this case, defendant was not given notice of the criminal nature of the proceedings. The hearing was instituted by a show cause order and placed on the civil docket and the proceedings lacked any semblance of a criminal trial. There is no indication in the record that the standard applied in finding defendant guilty of contempt was that of proof beyond a reasonable doubt. Further, the trial judge questioned defendant about his behavior in this case and never advised him of the privilege against self-incrimination or otherwise indicated to him that he did not have to answer. Finally, defendant was never informed of his right to produce witnesses in his own behalf. We conclude, therefore, that the contempt proceedings in this matter were civil in nature.

As was noted by this Court in *Jaikins,* in civil contempt proceedings a defendant must be afforded an opportunity to purge himself of the contempt by complying with such conditions as are set by the judge to remedy the situation. Defendant was never given such an opportunity in this case. Therefore, the January 13, 1981, lower court order holding defendant in contempt of court is vacated.

With respect to defendant's argument that the trial judge erred in denying his January 8, 1981, motion to modify the divorce decree to permit him to change the domicile of the minor child to Florida, we find that in order to review this question we must remand for further fact-finding.

The trial judge's decision to grant a motion to remove a minor child from this state should be based upon the best interests of the child. *Hutchins v Hutchins,* 84 Mich App 236, 238; 269 NW2d 539 (1978). The standards for determining the best interests of the child are defined by statute in Michigan. MCL 722.23; MSA 25.312(3) provides:

"'Best interests of the child' means the sum total of the following factors to be considered, evaluated, and determined by the court:

"(a) The love, affection, and other emotional ties existing between the parties involved and the child.

"(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

"(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

"(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

"(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

"(f) The moral fitness of the parties involved.

"(g) The mental and physical health of the parties involved.

"(h) The home, school, and community record of the child.

"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

"(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

"(k) Any other factor considered by the court to be

relevant to a particular child custody dispute." (As amended by 1980 PA 434, effective January 14, 1981.)

A trial judge must make specific findings of fact on each of these factors in rendering the determination. *Barnes v Barnes,* 77 Mich App 112, 113-114; 258 NW2d 65 (1977). The judge's findings are accorded great weight and will be reversed only when this Court is convinced that the great weight of the evidence favors a contrary result. *Dempsey v Dempsey,* 409 Mich 495, 498-499; 296 NW2d 813 (1980), MCL 722.28; MSA 25.312(8).

In *D'Onofrio v D'Onofrio,* 144 NJ Super 200, 206-207; 365 A2d 27 (1976), *aff'd* 144 NJ Super 352; 365 A2d 716 (1976), the New Jersey court formulated a good test for resolving change of domicile requests:

"Where * * * the custodial parent can demonstrate that a real advantage to herself and the children will result from their removing their residence to a place so geographically distant as to render weekly visitation impossible, then the court must weigh a number of determinative factors in order to accommodate the compelling interests of all of the family members. It should consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children. It must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders when she is no longer subject to the jurisdiction of the courts of this State. It must likewise take into account the integrity of the noncustodial parent's motives in resisting the removal and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations.

Finally, the court must be satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed."

We cannot agree with the trial judge's belief that the fact that a change in domicile may improve the quality of life and the economic condition for the custodial parent is not a relevant consideration in cases such as this one. As the *D'Onofrio* court indicates, the economic condition and quality of life of the custodial parent is inextricably intertwined with that of the child. This fact is recognized in subsection (c) of MCL 722.23; MSA 25.312(3), which requires a trial judge to consider the capacity and disposition of the custodial parent to provide the child with food, clothing, medical care and other material needs.

Error also occurred in the trial judge's application of the "clear and convincing evidence" standard to defendant's request for a change in domicile of the minor child. The test to be applied simply is whether the evidence establishes that it would be in the best interests of the child to permit removal. Thus, a mere preponderance of the evidence would be sufficient to permit removal.

Finally, although we can appreciate the trial judge's concern that plaintiff's parental relationship with the minor child would suffer if defendant were permitted to remove the child from Michigan, we note that if defendant cannot find employment in the area where he currently resides, future disruptions in the child's homelife are likely to occur from an in-state change of residence.

The transient nature of our society and the current, high level of unemployment in Michigan

do not make cases such as the instant one easy to resolve. Only once in the recorded history has the decision of the judge in a child custody matter received a general acclaim and approval of society. That case was adjudicated through the inspired wisdom of King Solomon. Mindful, therefore, of the difficult decision we place before the trial judge, we remand this cause with instructions that he consider the statutory criteria in the light of the guidelines provided by the New Jersey court in *D'Onofrio* and determine whether the best interests of the child would be furthered by changing domicile to Florida.

The January 13, 1981, lower court order finding defendant in contempt of court is vacated. The February 24, 1981, order of the lower court denying defendant's motion to change the domicile of the minor child is vacated and this cause is remanded for reconsideration of defendant's request in light of this opinion.

D. E. HOLBROOK, JR., J., concurred.

K. B. GLASER, J. *(dissenting)*. The contempt powers of the trial court are very important to the effectiveness of the court's function. Traditionally, contempt proceedings present a relatively simple factual issue and are decided summarily without a jury. *People v David Johnson,* 407 Mich 134, 146; 283 NW2d 632 (1979). The trial court found defendant in contempt, because of "a direct violation of a court order, full knowing what the court order stated, a complete disregard for the order; willful, disobedience, disregard". The record is replete with support for that finding. In my view that should end the inquiry as the trial judge is in the best position to determine whether or not defendant's actions are contemptuous. Furthermore, the

Christmas holiday had come and gone and it is apparent that no make-up visitation could restore the status quo. Counsel must have been aware of that. The order to show cause spoke only of "punishment", and the intent to allege criminal contempt was clear. The mere fact that the judge attempted to do the best he could for the civil party who was wronged does not convert the matter to civil contempt. Defendant was represented by competent counsel and any procedural errors were clearly harmless.

As to the denial of change of domicile, the trial judge used the criteria set forth in *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (1976), *aff'd* 144 NJ Super 352; 365 A2d 716 (1976). That case recognized that the antiremoval policies are to preserve the *mutual rights* of the child and the parent to develop and maintain their parental relationship through visitation. Defendant's failure to abide by the visitation orders while within the state bodes ill for the prospect of compliance with the visitation orders when the child and custodian are both out of the state. Defendant's good faith is also suspect. He could have gone to Florida to get his job and make his arrangements without the child during the Christmas visitation. Taking the child accomplished nothing but to give the Christmas visitation to defendant and his parents instead of plaintiff, in violation of the order. The trial judge had solid evidence to support his finding that permitting the removal would be tantamount to severing the parental rights of the mother.

The judge's refusal to permit removal based on an unsubstantiated telephone call by which defendant allegedly received a job offer is certainly reasonable in the face of the problem involved in

enforcing visitations once the custodial parent is beyond the state line. In the enforcement of incoming actions based on the Uniform Reciprocal Enforcement of Support Act, circuit judges are often faced with the injustice of having to enforce support payments against the noncustodial parent while powerless to compel the custodial parent to comply with visitation orders. *Brown v Turnbloom,* 89 Mich App 162; 280 NW2d 473 (1979), *San Joaquin County, California v Dewey,* 105 Mich App 122, 129; 306 NW2d 418 (1981).

I respectfully disagree with the majority holding that criteria for determining the best interests of the child for custody purposes under the Child Custody Act of 1970, MCL 722.23; MSA 25.312(3), was intended to, or should be, applicable to removal petitions. I would adopt the four-pronged test of *D'Onofrio, supra,* as the trial judge did here, which recognizes the mutual rights involved: (1) "It should consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children." (2) "It must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders when she is no longer subject to the jurisdiction of the courts of this State." (3) "It must likewise take into account the integrity of the noncustodial parent's motives in resisting the removal and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations." (4) "Finally, the court must be satisfied that

there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed." *D'Onofrio v D'Onofrio, supra.*

As with custody, in my opinion the enforcement of the nonremoval provisions of a judgment are best left to the sound discretion of the trial judge. His findings should stand unless they are against the great weight of the evidence, or there is a palpable abuse of discretion, or a clear legal error on a major issue. *Schoonmaker v Schoonmaker,* 104 Mich App 466, 469; 304 NW2d 608 (1981). In my view, the fact that our Supreme Court not only enacted the nonremoval requirement into a court rule, but further required that only the judge who awarded custody could permit the removal, is strong evidence of the great weight intended to be given the trial judge's decision on removal. GCR 1963, 729.4(1). Applying the *D'Onofrio* test, I find no error in the trial judge's decision and would affirm.