PEOPLE v McCARTNEY

Docket No. 69321. Submitted October 11, 1983, at Lansing.—Decided
    March 5, 1984. Leave to appeal applied for.

Defendant, Linda McCartney, was appointed conservator of her
    minor daughter's estate by the Probate Court of Lenawee
    County. The estate consists of $1,731.65 received in settlement
    of a lawsuit. The money was deposited in the Bank of Lenawee
    County pursuant to a limitation on the conservator's powers
    contained in her letters of authority. On March 1, 1982, the
    probate court authorized the transfer of the funds to a different
    bank, however, the Bank of Lenawee County did not effect a
    transfer but, instead, gave the money to the defendant, who did
    not deposit it with the new bank. On July 20, 1982, the probate
    register signed a complaint initiating an action in the district
    court charging the defendant with embezzlement by a trustee
    of a sum in excess of $100. Following an examination, the
    defendant was bound over to the Lenawee Circuit Court for a
    trial. On August 30, 1982, the probate court issued a show
    cause order, the hearing of which on September 13, 1982, ended
    with a contempt adjudication by which defendant was sen-
    tenced to serve 20 days in jail or pay $1,731.35. Defendant then
    moved in the circuit court to dismiss, challenging the prosecu-
    tion as violative of the Double Jeopardy Clauses of the United
    States and Michigan Constitutions. The trial court, Kenneth B.
    Glaser, Jr., J., denied her motion to dismiss. Defendant appeals
    by leave granted. *Held:*

    1. The United States and Michigan Constitutions bar state
    criminal prosecution and criminal contempt proceedings for the
    same conduct. The Double Jeopardy Clauses of both constitu-
    tions apply to criminal contempts.

    2. The contempt adjudication by the probate court was for a
    criminal contempt. The wrongful act, as expressed by the
    probate judge from the bench, was a conversion of the money
    by the defendant and the purgation allowed was repayment.
    The double jeopardy bar against dual prosecution for the same

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 17 Am Jur 2d, Contempt §§ 15, 78.
[3, 4] 17 Am Jur 2d, Contempt §§ 4, 5.

act is thus applicable to the charge of embezzlement by a trustee.

3. The probate court's cloaking of the punishment with the civil attire of purgation does not disguise the punitive nature of the sentence. Defendant's sentence was not imposed to compel payment of the money forthwith since the record shows that she could not do so. Punishment for its nonpayment could not be accomplished through civil contempt.

The punishment being criminal in nature, it follows that double jeopardy attaches and the instant case must be and is quashed.

1. Constitutional Law — Constitutional Rights — Criminal Law — Criminal Contempt.

Double jeopardy and other constitutional rights applicable in criminal cases also apply to criminal contempt actions.

2. Constitutional Law — Double Jeopardy — Criminal Prosecutions — Criminal Contempt.

The United States and Michigan Constitutions bar state criminal prosecution and criminal contempt proceedings for the same conduct (US Const, Am V; Const 1963, art 1, § 15).

3. Contempt — Civil Contempt.

A contempt consisting of the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party is a civil contempt, and the party stands committed till he complies with the order; the order in a civil contempt case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court; the opposite private party is interested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases.

4. Contempt — Criminal Contempt.

A contempt consisting of the doing of a forbidden act which is injurious to the opposite party is a criminal contempt, and a conviction for such a contempt is followed by fine or imprisonment, or both, and this is by way of punishment; in such a case the state alone is interested in the enforcement of the penalty, it being a punishment tending to inspire fear or dread and which has a tendency to prevent a repetition of the offense in other similar cases.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Nathan T. Fairchild,* Prosecuting Attorney, for the people.

*Baker, Durst, Marr & Nelson* (by *William S. Kenyon),* for defendant on appeal.

Before: Danhof, C.J., and Bronson and W. R. Peterson,* JJ.

W. R. Peterson, J. Appellant, charged with embezzlement by a trustee of a sum in excess of one hundred dollars, MCL 750.174; MSA 28.371, appeals by leave granted from the circuit court's denial of her motion to dismiss. The motion challenged the prosecution as violative of the Double Jeopardy Clauses of the United States[1] and Michigan[2] Constitutions. The prior jeopardy to which appellant refers was a contempt adjudication in the probate court from which her authority as a fiduciary was derived.

The Probate Court of Lenawee County appointed appellant as conservator of her minor daughter's estate consisting of $1,731.65 received in settlement of a lawsuit. The money was deposited in the Bank of Lenawee County pursuant to a limitation on appellant's powers as a conservator contained in her letters of authority.[3] On March 1, 1982, the probate court authorized the transfer of the funds to a different bank, by the following order:

"the Bank of Lenawee County is hereby authorized to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] US Const, Am V.

[2] Const 1963, art 1, § 15.

[3] "All funds belonging to the estate of said minor shall be deposited in a federally insured banking institution and no funds are to be withdrawn without an order of the court."

For the power to impose limitations on the powers of a conservator in the letters of authority, see MCL 700.486; MSA 27.5486.

transfer the funds standing in the name of said minor, to the Clinton Branch of the Ann Arbor Bank & Trust."

Neither the letter nor the spirit of the order were obeyed. The Bank of Lenawee County did not effect a transfer of the funds as specified in the order. Instead, it gave the money to appellant who did not deposit it with Ann Arbor Bank & Trust.

On July 20, 1982, the probate register signed a complaint in district court initiating the challenged embezzlement prosecution. Following an examination, the defendant was bound over to the circuit court for a trial. On August 30, 1982, the probate court issued a show cause order,[4] the hearing of which on September 13, 1982, ended with a contempt adjudication by which appellant was sentenced to serve 20 days in jail or pay $1,731.35.

Appellant contends that the adjudication and punishment was for criminal contempt based on the same act as that for which the embezzlement prosecution is instituted. If so, she cannot again be put in jeopardy under the United States and Michigan Constitutions.

While it was once believed that double jeopardy and other constitutional rights applicable in criminal cases did not attach to contempt proceedings because they were judicially *sui generis* and not

[4] "It appears to the court that Linda D. McCartney, conservator of the estate, has failed to file a certification of deposit pursuant to the order of the court dated March 1, 1982, authorizing the transfer of funds standing in the name of said minor, to the Clinton Branch of the Ann Arbor Bank & Trust.

"Now therefore, you, Linda D. McCartney, are ordered to appear before the Court, Second Floor, Lenawee County Judicial Building, Adrian, Michigan, on September 13, 1982, at 3:15 *[sic]* a.m. to show cause why you should not be held in contempt of court for failure to file proof of proper deposit of funds standing in the name of said minor, to the Clinton Branch of the Ann Arbor Bank & Trust. Your failure to appear may result in a bench warrant for your arrest."

criminal in nature,[5] that view has clearly been untenable as to criminal contempt actions since *Bloom v Illinois,* 391 US 194; 88 S Ct 1477; 20 L Ed 2d 522 (1968). *Duncan v Louisiana,* 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968), having held that the 14th Amendment made the 6th Amendment right to trial by jury in criminal cases obligatory in state prosecutions, *Bloom* held that a criminal contempt resulting in a two-year sentence required trial by jury in the state court. In *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), it was held that the 14th Amendment also made the double jeopardy provisions of the 5th Amendment applicable to state prosecutions, and *Waller v Florida,* 397 US 387; 90 S Ct 1184; 25 L Ed 2d 435; Anno: 25 L Ed 2d 968 (1970), dis-

---

[5] See *In re Chadwick,* 109 Mich 588, 597; 67 NW 1071 (1896); *Jurney v MacCracken,* 294 US 125, 151; 55 S Ct 375, 379; 79 L Ed 802, 808 (1935); *Ex Parte Hudgings,* 249 US 378, 382; 39 S Ct 337, 339; 63 L Ed 656, 658; 11 ALR 333, 336 (1919), and *Re Chapman,* 166 US 661, 672; 17 S Ct 677, 681; 41 L Ed 1154, 1159-1160 (1897):

"it is quite clear that the contumacious witness is not subjected to jeopardy twice for the same offense, since the same act may be an offense against one jurisdiction and also an offense against another; and indictable statutory offenses may be punished as such while the offenders may likewise be subjected to punishment for the same acts as contempts, the two being *diverso intuito* and capable of standing together."

And, see MCL 600.1745; MSA 27A.1745, providing that persons proceeded against for contempt (without distinguishing between civil and criminal contempts) should also be liable for indictment for the same misconduct if it be an indictable offense.

This view continued to prevail in many states until quite recently, *e.g., People ex rel Scott v Master Barbers & Beauty Culturists Ass'n,* 9 Ill App 3d 981; 293 NE2d 393; 88 ALR3d 1081, 1089 (1973), and this notwithstanding many decisions of the United States Supreme Court treating criminal contempt proceedings as criminal prosecutions mandating observance of the provisions of the Bill of Rights applicable to criminal prosecutions, *e.g., Gompers v Buck's Stove & Range Co,* 221 US 418; 31 S Ct 492; 55 L Ed 797 (1911), holding that the presumption of innocence, the right not to testify against self, and the burden of proof of guilt beyond a reasonable doubt are applicable to criminal contempt proceedings.

pelled the notion that double jeopardy was inapplicable to the prosecution of the same act by different sovereignties. It thus follows that the United States Constitution bars state criminal prosecution and criminal contempt proceedings for the same conduct.

The same result must obtain under the Michigan Constitution for it is clear that, as to criminal contempts, Michigan has long since abandoned the view expressed in *In re Chadwick, supra,* p 597 that "Proceedings for contempt are not criminal causes within the intent and meaning of the Constitution of the United States or of this State". Since *Cross Co v UAW Local No 155 (AFL-CIO),* 377 Mich 202, 210; 139 NW2d 694 (1966), identified criminal contempt proceedings as mandating the constitutional protections afforded those charged with crimes,[6] numerous cases have affirmed in regard to criminal contempts the right to counsel, the presumption of innocence, that guilt must be proved beyond a reasonable doubt, and that the accused need not be a witness against himself. See, *e.g., Jaikins v Jaikins,* 12 Mich App 115, 120; 162 NW2d 325 (1968); *People v Goodman,* 17 Mich App 175; 169 NW2d 120 (1969); *People v Randazzo,* 21 Mich App 215; 175 NW2d 333 (1970); *People v Joseph,* 384 Mich 24; 179 NW2d 383 (1970); *People v Johns,* 384 Mich 325; 183 NW2d 216 (1971); *People v Nowicki,* 384 Mich 482; 185 NW2d 390 (1971); *State Bar of Michigan v Cramer,* 399 Mich 116; 249 NW2d 1 (1976); *Sword v Sword,* 399 Mich 367; 249 NW2d 88 (1976); *Fraternal Order of Police, Lodge #98 v Kalamazoo County,* 82 Mich App

---

[6] For earlier acknowledgments of the right to counsel, to have witnesses in defense, to specific notice of the nature of the charges and the right to adequate time to prepare a defense, see *In re Smilay,* 235 Mich 151; 209 NW 191 (1926), and *In re White,* 327 Mich 316; 41 NW2d 882 (1950).

312; 266 NW2d 805 (1978), and *State of Michigan ex rel Wayne Prosecutor v Powers,* 97 Mich App 166; 293 NW2d 752 (1980).

While none of these cases, nor any other in Michigan, have addressed the applicability of the Double Jeopardy Clause to criminal contempts, it would seem clear that the recognition of criminal contempts as the equivalent of criminal prosecutions therein answers the question affirmatively. So it has been held in other states. *People v Colombo,* 31 NY2d 947; 293 NE2d 247 (1972), *after remand Colombo v New York,* 405 US 9; 92 S Ct 756; 30 L Ed 2d 762 (1972); *Ex Parte Brown,* 574 SW2d 618 (Tex Civ App, 1978), and *People v Gray,* 69 Ill 2d 44; 370 NE2d 797 (1977), *cert den* 435 US 1013; 98 S Ct 1887; 56 L Ed 2d 395 (1978).

The distinction between civil and criminal contempts was outlined in *People ex rel Attorney General v Yarowsky,* 236 Mich 169, 171-172; 210 NW 246 (1926), where the Court said:

" 'If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court. If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. In one case the private party is interested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases. On the other hand, the State alone is interested, in the enforcement of the penalty, it being a punishment which operates *in terrorem,* and by that means has a tendency to prevent a repetition of the offense in other similar cases.' "

Were the proceedings in the Lenawee County Probate Court for criminal or for civil contempt? At no point in the proceedings was there any attempt on the part of the probate judge to define the contempt citation as civil or criminal, or to define the parameters of the hearing, *i.e.,* either the act for which appellant was subject to possible punishment or for which she was in fact punished. The order to show cause, fn 4 *supra,* required appellant to respond for a failure to comply with a prior order of the court directing appellant "to file a certification of deposit pursuant to the order of the court dated March 1, 1982", and "to file proof of proper deposit of funds". The court's order of March 1, 1982, required no such act on the part of appellant. At the onset of the hearing, the probate judge said that the hearing was for appellant to show cause why she should not be held in contempt "for failing to obey the *orders* of the court", adding:

"Now on June 15th you were ordered to prove to this court, show proof to the court as required by the order that you deposited those funds with the Ann Arbor Ban —the Ann Arbor Bank and Trust Company. Did you deposit those funds to the Ann Arbor Bank and Trust Company?"

There was no court order to file such proof; rather a letter was sent to appellant on June 15th directing her to file such proof.[7]

Had the probate court afforded appellant any of the protections available to those charged with criminal contempts, it might be concluded that the proceedings were for criminal contempt, but she

---

[7] Courts speak through their judgments and orders, and not through opinions, bench rulings, or off the bench words or letters. *People v Collier,* 105 Mich App 46; 306 NW2d 387 (1981).

was afforded none of those rights. She appeared without counsel, was not advised of her right to counsel, and she was sworn and questioned without advice as to her privilege against testifying. The absence of those constitutional amenities does not, however, demonstrate that the proceedings were civil. *People v Johns, supra.*[8]

The sole source to which we can turn, the probate judge having made no written findings or order, other than a commitment order, is the transcript of the September 13, 1982, hearing.

Appellant answered the judge's question, above, negatively, acknowledging that she had "wound up using the money", had "spent it on several different things", but adding that she had not taken it for her "own use or betterment of any kind".[9] Asked by the judge how she proposed to pay the money back, appellant described her position as an abandoned mother of four who had been on public assistance for seven years, and who had just begun to receive some child support and had obtained the first job she had ever had. She said she could not repay the money at once but could do so, with interest, within six months. The hearing then concluded thus:

"*The Court:* I do not consider that you have purged yourself of contempt, you misrepresented to the court what you were going to do with the money. You converted it after a court believed you. You converted the money to your own use. I find you in contempt of court

[8] To the extent that the majority opinion in *Watters v Watters,* 112 Mich 1; 314 NW2d 778 (1981), seems to suggest that the denial of rights applicable to criminal cases proves *a fortiori* that the proceedings were civil, we are not of such view.

[9] The probate judge made no inquiry as to whether any of the funds had been spent for the benefit of the minor ward. There was testimony at the preliminary examination to the effect that the funds, in part at least, were spent for the benefit of the ward, an end contemplated by the probate code. MCL 700.485; MSA 27.5485.

and I sentence you to 20 days in jail. You may be released from jail upon the returning—any day the minute you return these funds to the estate of the minor you can be released from jail, otherwise you spend 20 days there. You are remanded to the custody of the Lenawee County Sheriff's Department to commence your jail sentence.

"*The Witness:* Ok. Uh, excuse me sir, one more question. Uh, at the end of 20 days uh, I'm going to have to stay in jail cause I don't have no way of getting it, but at the end of 20 days, uh, can you tell me what should—what else should I do just continue to try to get it paid back as far as it is possible?

"*The Court:* I'm concerned with—you still owe the estate regardless if you spent the rest of your life there, you still owe the estate.[10]

"*The Witness:* Well that's what I am saying.

"*The Court:* You still owe the estate.

"*The Witness:* Ok."

The prosecution seeks to avoid the application of the double jeopardy rule by contending that (1) the contempt was not for the same act as that for which prosecution was commenced, *i.e.,* the contumacious act charged by the order to show cause was not a conversion of funds but a failure to file proof of deposit, and (2) the contempt was civil rather than criminal since appellant could have been purged of the contempt and released from jail by repayment of the funds. This supposed distinction between acts is one without difference, as clearly appears from the fact that purgation was defined by the judge in terms of repayment,

[10] The court's comments seem to suggest the possibility of successive contempt citations viewing the failure to repay as a continuing contempt. Though not material to this case, such a possibility would seem anachronistic when compared to the present state of criminal law under which, were appellant convicted of this embezzlement charge, she could not be ordered to pay restitution as a condition of probation beyond her ability to pay. MCL 771.3(5)(a); MSA 28.1133(5)(a).

without which proof of deposit could not be made. The wrongful act, as expressed by the probate judge from the bench, was a conversion of the money by the fiduciary,[11] and the purgation allowed was repayment.

Nor does the probate court's cloaking of the punishment with the civil attire of purgation disguise the punitive nature of the sentence. Appellant's sentence was not imposed to compel payment of the money forthwith for the record shows that she could not do so. Punishment for its nonpayment could not be accomplished through civil contempt. *Mast v Washtenaw Circuit Judge,* 154 Mich 485; 117 NW 1052 (1908); *Klimek v Borkowski,* 259 Mich 383; 243 NW 313 (1932); *Fittante v Schultz,* 20 Mich App 259; 174 NW2d 29 (1969).

The punishment being criminal in nature, it follows that double jeopardy attaches and the instant case must be and is quashed.

[11] The double jeopardy bar against dual prosecution for the same act is thus applicable under the test of *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180, 182; 76 L Ed 306, 309 (1932), and Michigan's "same transaction" test, *People v White,* 390 Mich 245, 258; 212 NW2d 222 (1973); *Crampton v 54-A Dist Judge,* 397 Mich 489, 499; 245 NW2d 28 (1976).