HARVEY *v.* LEWIS.

APPEAL OF LIST.

1. CONTEMPT—CRIMINAL—CIVIL.

Proceedings for contempt are of 2 classes:  criminal or punitive, and civil, remedial, or coercive; the former are conducted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders; the latter are instituted to protect, preserve, and enforce the rights of private parties, and to compel obedience to the orders, judgments, and decrees of the courts made to enforce the rights and remedies to which the courts have decided that such parties are lawfully entitled.

2. SAME—CRIMINAL—CIVIL.

Criminal contempt arises where the contemnor's conduct of noncompliance with a court order has altered the *status quo* so that it cannot be restored or the relief intended becomes impossible; civil contempt arises where the contemnor's conduct of noncompliance with a court order is such that the *status quo* can be restored and it is still possible to grant the relief orginally sought.

3. SAME—CIVIL.

Defendant's refusal to obey court order to aid in locating graves of persons buried in cemetery while he was superintendent, after he had testified unequivocally that he could locate the graves and later reaffirmed this, *held,* to be civil contempt, where at a subsequent hearing defendant failed to prove a recognized excuse or defense indicating an inability or reason for not complying with a court order.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  17 Am Jur 2d, Contempt §§ 4, 5.
[3]  17 Am Jur 2d, Contempt § 34.
[4]  5 Am Jur 2d, Appeal and Error § 869.
[5–7]  17 Am Jur 2d, Contempt § 105.

4. APPEAL AND ERROR—COURTS—DISCRETION OF COURT.

A trial court's finding that a party has not complied with an order of the court must be upheld in the absence of a showing of abuse of discretion.

5. CONTEMPT—CIVIL—COMMITMENT.

The inherent and statutory contempt power of a trial court, when faced with civil contempt, justifies conditional imprisonment (CLS 1961, §§ 600.1701, 600.1715).

6. SAME—CIVIL—NO LIMITATION ON COMMITMENT.

Imprisonment for civil contempt might be forever so long as it is within the contemnor's power to comply with a court order he refuses to perform (CLS 1961, § 600.1715).

7. SAME—COMMITMENT.

Trial court's order of commitment for civil contempt of court stating that defendant "shall be committed to * * * jail for a period of 30 days or until such lesser time when he shall purge himself of the aforementioned contempt in which he now stands", *held*, proper, since it is coercive in nature and purpose and defendant may free himself by complying with court's directive (CLS 1961, § 600.1715).

Appeal from Wayne; Rashid (Joseph G.), J. Submitted Division 1 January 8, 1968, at Detroit. (Docket No. 2,605.) Decided April 2, 1968. Rehearing denied May 28, 1968.

Bill by Sidney M. Harvey, Thermie Henkle, William T. McAlonan, Emma Moist, and others against Daniel L. Lewis, *et al.*, doing business as Lewis Bros., Brookdale Cemetery Association, Brookdale, Inc., Mt. Sinai Memorial Cemetery Association, and others, for accounting, receivership proceedings, quieting of title, cancellation of encumbrances, impressment of trust, and for other relief in connection with corporate organization and sales of property for cemetery purposes.

Sydney List, a witness, was ordered committed for contempt of court. He appeals. Affirmed.

*A. Albert Sugar,* for plaintiff.

*Sydney List, in propria persona.*

HOLBROOK, J.   Appellant, Sydney List, appeals in person from an amended order of commitment for contempt entered August 11, 1966, by the Honorable Joseph G. Rashid, circuit judge, following appellant's failure or refusal to aid and assist in locating graves of persons who were buried in Brookdale Cemetery, Livonia, Michigan, while he was superintendent.

At a hearing held June 30, 1965, involving the exhumation of certain graves, appellant testified unequivocally that he could locate the graves. He reaffirmed this testimony on December 6, 1965. A certain gravesite pointed out and identified by appellant 3 days later (December 9, 1965), when dug up, was found never to have been used. On December 13, 1965, the court, *sua sponte,* called a hearing in order to obtain an explanation of what occurred December 9. Appellant, a subpoenaed witness, again testified that he could locate the graves of persons buried in the cemetery while he was in charge of its operation.

"*The Court:* Now, do you recall testifying before me in June of this year, June 30th, to be exact, wherein you testified that you could identify and locate the graves in the cemetery?

"*A.* I did, yes.

"*The Court:* You also said unequivocally, as I recall, that you could locate them all.

"*A.* Yes, I did.

"*The Court:* By locating the grave, you could locate the grave of the proper person buried there.

"*A.* The person purported to be buried there. I couldn't identify the person because I didn't know who it was, but I could identify the grave where the

casket was brought in purporting to contain the body of such and such a person. I couldn't identify the person.

"*The Court:* I am not referring to that. If one was buried there up until March 27th, as you testified here as late as June, you could locate these graves?

"*A.* Yes.

"*The Court:* While you could not identify the person, if there was a person brought there for burial, you placed that particular person in a particular grave.

"*A.* Yes."

The day of the hearing the court entered an order for appearance which reads in part as follows:

"This matter having come on for hearing on matters relating to petitions for exhumation, and the court *sua sponte* having caused subpoenas to issue to certain witnesses, their testimony having been taken in open court, and the court being of the opinion that it will be in the best interest of the petitioners to have Sydney List and Harvey Grode present at the Brookdale cemetery during said exhumations;

"It is ordered that Sydney List shall appear in person at the Brookdale cemetery, Middlebelt and Six Mile road, Livonia, Michigan, on those dates and at such times as shall be indicated by this court from time to time when exhumations shall take place in accordance with the order of this court, to assist in locating graves of persons allegedly buried in said cemetery."

On June 30, 1966, at a hearing, the court, in making arrangements for the exhumation of several graves, reminded appellant of the December 13 order for appearance and received the following assurances from appellant:

"*The Court:* I want you to pick the grave out in the presence of 2 people or 3 people.

"*Mr. List:* All right.

"*The Court:* I want you to pick the grave out and establish where these people are buried.

"*Mr. List:* Naturally. I don't even know what to pick out if they are not there.

"*The Court:* You will agree to do so either by sending you a telegram or a letter?

"*Mr. List:* I want 24-hour notice.

"*The Court:* You will get 24-hour notice, just as you got before, by letter.

"*Mr. List:* Providing the records are there.

"*The Court:* Would a telephone call suffice?

"*Mr. List:* A phone call would suffice. I don't go back on my word. A phone call is sufficient."

A hearing on an order to show cause was held July 8, 1966, for the purpose of determining the reason for appellant's failure or refusal to comply as required by the court's December 13 order and notice to appear at the Brookdale cemetery July 6, 1966. After hearing appellant at length, the court stated as follows:

"The effect of this is that I find you guilty of contempt of court. I sentence you to 30 days at the Detroit house of corrections [later corrected to Wayne county jail], but I am going to give you an opportunity to purge yourself of that contempt by appearing on Wednesday, July 13 at 8:30 in the morning to identify these 2 graves."

The day after appellant was given opportunity to purge himself, July 14, 1966, a hearing was held for the sole purpose of determining whether appellant did in fact purge himself. The court in finding that appellant had failed or refused to purge himself commented as follows:

"The record is replete in this court with your saying, 'I can locate every grave.' To me, the

reservation you make, 'Unless the records are there as I left them', is frivolous to say the least. It is an incompetent excuse. * * * You made demand for certain records and the court called Rutten-Welling Company and had them sent out there from downtown out to the cemetery. They were there about a quarter to 11. * * * At two o'clock you went there. The records were there and you did not assist. * * * You said you refused to identify the graves because the records are not complete. * * * I don't think the record shows here that you have purged yourself from this contempt. The sentence stands."

An order of commitment was entered the same day. An amended order of commitment for contempt was entered August 11, 1966,[1] from which

---

[1] The amended order of commitment for contempt reads as follows:
"This matter having come on to be heard on July 8, 1966, upon an order to show cause *sua sponte* directed to the defendant, Sydney List, why he should not be committed for contempt by reason of his refusal to comply with an order of this court dated December 13, 1965, and it appearing that proper service of said order to show cause was duly made upon said Sydney List, and after due hearing in open court it appeared from the facts submitted that the said Sydney List did refuse to comply with the aforementioned order of December 13, 1965, in that he refused to aid and assist in locating graves of persons buried under his supervision in Brookdale cemetery, and the court having declared the said Sydney List guilty of contempt for having violated said order did thereupon sentence the said Sydney List to serve 30 days in the Wayne county jail and said Sydney List was then and there given the opportunity to purge himself of said contempt by complying with said order of December 13, 1965, and thereafter on July 14, 1966, a second hearing having been duly had in open court wherein it did further appear from testimony taken that the said Sydney List did fail to purge himself of the contempt, and the said Sydney List having posted a $200 bond to stay the imposition of the sentence of the court for said contempt, and the court being duly advised in the premises,
"It is ordered that the defendant, Sydney List, is guilty of the contempt alleged against him for his refusal to aid and assist the receiver in this cause in locating graves of persons buried under his supervision in Brookdale cemetery, Livonia, Michigan, as heretofore required by an order of December 13, 1965.
"It is further ordered that the said Sydney List shall be committed to the Wayne county jail for a period of 30 days or until such lesser time when he shall purge himself of the aforementioned contempt in which he now stands.
"It is further ordered that a warrant of commitment issue to carry this order into effect."

order an appeal was taken on August 31, 1966, by appellant.

Appellant's statement of questions involved consists of a listing of a multitude of alleged errors committed in the lower court proceedings. Many of the alleged errors are immaterial to the instant appeal, and others are without merit. We find 2 issues calling for consideration in reaching a decision:

(1) Was the nature of the proceeding below a civil or criminal contempt?

(2) Was the lower court's finding appellant guilty of contempt and the amended order of commitment proper?

The textbook case of *In re Nevitt* (CA 8, 1902), 117 F 448, 458, 459, 461 distinguishes civil and criminal contempt proceedings:

"Proceedings for contempt are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce.    *    *    *    A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person

to do an act which the court has ordered him to do
for the benefit or the advantage of a party to a
suit or action pending before it, and he is com-
mitted until he complies with the order, the com-
mitment is in the nature of an execution to enforce
the judgment of the court, and the party in whose
favor that judgment was rendered is the real party
in interest in the proceedings. This is the nature
of the case under consideration. These petitioners
* * * are imprisoned only until they comply with
the orders of the court, and this they may do at
any time. They carry the keys of their prison in
their own pockets."[2]

Another test of whether the contempt is civil
or criminal involves consideration of subsequent
conduct—an "after the fact" determination.[3] It
may be summarized: Where the contemnor's con-
duct of noncompliance with the court order has
altered the *status quo* so that it cannot be restored
or the relief intended becomes impossible, there is
criminal contempt; however, where the contemnor's
conduct of noncompliance with the court order is
such that the *status quo* can be restored and it is
still possible to grant the relief originally sought,
there is civil contempt. See *Green* v. *United States*

---

[2] *State* v. *Knight* (1893), 3 SD 509, 514 (54 NW 412, 413, 414)
states:

"If the contempt consists in the refusal of a party to do something
which he is ordered to do for the benefit or advantage of the opposite
party, the process is civil, and he stands committed till he complies
with the order. The order in such a case is not in the nature of a
punishment, but is coercive, to compel him to act in accordance with
the order of the court. If, on the other hand, the contempt consists
in the doing of a forbidden act, injurious to the opposite party,
the process is criminal, and conviction is followed by fine or im-
prisonment, or both; and this is by way of punishment. In one
case the private party is interested in the enforcement of the order,
and, the moment he is satisfied, the imprisonment ceases. On the
other hand, the state alone is interested in the enforcement of the
penalty, it being a punishment which operates *in terrorem*, and by
that means has a tendency to prevent a repetition of the offense in
other similar cases."

[3] A test proffered by Professor M. Kelman, Wayne State University,
College of Law, Equity course lectures, 1965.

(1958), 356 US 165, 197, 198 (78 S Ct 632, 650, 651, 2 L Ed 2d 672, 695, 696).

We find that these tests, when applied to the facts herein, bring the proceedings of the lower court within that class of contempt known as civil contempt.

The lower court found the appellant guilty of contempt at a hearing following the latter's failure to purge himself when given opportunity. At the hearing appellant failed to prove a recognized excuse or defense indicating an inability or reason for not complying with the court's order of December 13, 1965, requiring him "to assist in locating graves of persons allegedly buried in said cemetery." The lower court's finding of appellant's noncompliance with its order for appearance must be upheld in the absence of a showing of abuse of discretion. No such showing has been made.

We find that the lower court's commitment for contempt was also proper. The inherent and statutory[4] contempt power of the lower court when faced with civil contempt justifies conditional imprisonment. Theoretically, imprisonment for civil contempt might be forever so long as it is within the contemnor's power to comply with the court order he refuses to carry out[5]—"They carry the keys of their prison in their own pockets." *In re Nevitt, supra,* p 461.

The amended order of commitment states that the appellant "shall be committed to the Wayne county jail for a period of 30 days or until such lesser time when he shall purge himself of the aforementioned contempt in which he now stands." The amended

---

[4] CLS 1961, § 600.1701 (Stat Ann 1962 Rev § 27A.1701).

[5] CLS 1961, § 600.1715 (Stat Ann 1962 Rev § 27A.1715) sets limits on criminal contempt, but places no limit on commitment for civil contempt, as defined by Professor Kelman, *supra,* footnote 3. Also, see *In re Ridgley* (1932), 261 Mich 42.

order is coercive in nature and purpose and it is evident that appellant carries the keys to freedom in his willingness to comply with the court's directive.

Affirmed.

QUINN, P. J., and J. H. GILLIS, J., concurred.