*In re* CONTEMPT OF RAPANOS

Docket No. 77832. Submitted February 7, 1985, at Lansing.—Decided
  June 4, 1985. Leave to appeal applied for.

  Nicolaos A. Rapanos brought an action in the Midland Circuit
    Court against his brother, John A. Rapanos, alleging improprie-
    ties with respect to the business in which they were engaged,
    Rapanos Enterprises. The circuit court issued a temporary
    restraining order enjoining John Rapanos, hereinafter defen-
    dant, from taking any actions with respect to the business
    without the approval of the plaintiff. Further court orders were
    issued requiring defendant to perform, or refrain from perform-
    ing, specific acts. The plaintiff complained of serveral alleged
    violations of the court's orders and sought the aid of the
    Midland County Prosecutor's office, which instituted criminal
    contempt proceedings on eight of the charges. The circuit court,
    Charles A. Wickens, J., found defendant guilty of four acts of
    criminal contempt. The four acts were: (1) execution of a
    mortgage on property alleged to be business property, (2) fail-
    ure to return business documents and records in a timely
    manner after being ordered to do so, (3) retention of rental
    receipts on a property, and (4) issuance of a $2,400 check to his
    wife out of Rapanos Enterprises account. Defendant appealed,
    alleging that his conduct in each instance did not meet the
    requisite standard for a finding of criminal contempt. *Held:*

      1. A finding of criminal contempt requires a clear and un-
    equivocal showing that the defendant engaged in a wilful
    disregard or disobedience of the authority or orders of the
    court.

      2. The evidence in each instance shows that the defendant

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 AM Jur 2d, Appeal and Error §§ 880-887.
[2-5] 17 Am Jur 2d, Contempt § 13 *et seq.*
  Affidavit or motion for disqualification of judge as contempt. 70
    ALR3d 797.
[4] 17 Am Jur 2d, Contempt § 4.
[5] 17 Am Jur 2d, Contempt § 34 *et seq.*
[6] 46 Am Jur 2d, Judges § 166 *et seq.*
  Disqualification of judge by state, in criminal case, for bias or
    prejudice. 68 ALR3d 509.

clearly and unequivocally violated the orders of the court. Additionally, the evidence establishes that the defendant's actions constituted an obstruction of justice. The trial court did not err in finding the defendant in contempt.

3. The evidence supports the trial court's finding that defendant did not rely in good faith on his attorney's advice in violating the court orders and that defendant, in fact, acted intentionally, wilfully, and in bad faith.

4. The trial court did not err in finding defendant guilty of criminal, rather than civil, contempt with regard to the return of the business records. Defendant's retention of records, and his taking of more after the court ordered their immediate return, constituted an affront to the dignity of the court and hampered the administration of justice by causing Nicolaos Rapanos substantial delay in his preparation of the civil case against defendant.

5. Defendant's allegation that the trial judge should have disqualified himself *sua sponte* from the contempt proceedings is without merit.

Affirmed.

1. APPEAL — SUFFICIENCY OF EVIDENCE — BENCH TRIAL — CRIMINAL LAW.

The Court of Appeals, in reviewing the sufficiency of the evidence in an appeal of a criminal conviction in a bench trial, must determine whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find essential elements of the charged crime proven beyond a reasonable doubt or whether the court clearly erred.

2. CONTEMPT — CRIMINAL CONTEMPT.

Two elements must be proven beyond a reasonable doubt to support a conviction of criminal contempt: (1) that the individual engaged in a wilful disregard or disobedience of the authority or orders of the court, and (2) that the contempt must be clearly and unequivocally shown; a third element required by some jurisdictions is that the contemptuous act must be shown to pose an immediate threat to the administration of justice.

3. CONTEMPT — CRIMINAL CONTEMPT — RELIANCE ON ATTORNEY'S ADVICE.

An individual who acts in good faith reliance upon his attorney's advice or interpretation of a court order cannot be found guilty of criminal contempt because the element of an intentional violation of the court's order is not established.

4. CONTEMPT — CRIMINAL CONTEMPT — CIVIL CONTEMPT.

Criminal contempt proceedings are instituted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders; civil contempt proceedings are instituted to preserve and enforce the rights of private parties to actions and to compel obedience to orders and decrees made to enforce those rights and to administer remedies.

5. CONTEMPT — CRIMINAL CONTEMPT — CIVIL CONTEMPT.

There is criminal contempt where an individual's conduct has altered the status quo of a civil proceeding so that it cannot be restored or the relief intended has become impossible; there is civil contempt where the individual's noncompliance with a court order is such that the status quo can be restored and it is still possible to grant the relief originally sought.

6. JUDGES — DISQUALIFICATION OF JUDGE.

An actual showing of prejudice must be established before a trial judge will be disqualified because of personal bias for or against a party.

*Gerald L. White,* Prosecuting Attorney, and *Lawrence Wm. Smith,* Assistant Prosecuting Attorney, for plaintiff.

*Bodman, Longley & Dahling* (by *Richard D. Rohr* and *Robert G. Brower),* for defendant.

Before: DANHOF, C.J., and T. M. BURNS and BEASLEY, JJ.

PER CURIAM. Defendant appeals as of right from his January 10, 1984, conviction by the trial judge on four counts of criminal contempt. On February 3, 1984, defendant was fined and sentenced to serve five days imprisonment for each of his convictions, the terms to run concurrently. Defendant appeals as of right.

According to the evidence in this case, defendant's brother, Nicolaos Rapanos, filed a civil suit against defendant on August 4, 1981, after the two brothers' 30-year business relationship as Rapanos

Enterprises had deteriorated. On that same day, the trial court issued a temporary restraining order stating that defendant was enjoined from:

"[T]aking any actions, including without limitation, buying, selling, assigning, transferring or encumbering any business and investment property, hiring or terminating the employment of any employees, and withdrawing any funds or writing any checks with respect to the said business and real property without the written approval of plaintiff."

On November 10, 1981, the trial judge issued an order to show cause why defendant should not be held in criminal contempt. This order was entered after Nicolaos Rapanos had complained of 37 alleged violations of the restraining order. Nicolaos Rapanos, through the Midland County Prosecutor's office, proceeded on eight of the 37 charges. The charges and defendant's respective defenses included:

1) That defendant on August 26, 1981, executed a mortgage to the Peoples National Bank and Trust Company of Bay City for a loan of $100,000 using property owned generally by Rapanos Enterprises as collateral without obtaining the approval of Nicolaos Rapanos or the court. Defendant claimed as a defense that he did not intentionally violate the temporary restraining order, that the mortgage was contemplated months before the temporary restraining order was issued, and that he procured the mortgage on the good faith reliance upon his attorney's advice.

2) That on August 31, 1981, defendant paid property taxes in excess of $40,000 on property owned by Rapanos Enterprises, without approval of his brother or the court. Defendant claimed that he did not intend to violate the temporary restraining order, and that he acted in good faith

reliance on his attorney's advice as his defense to this claim.

3) That defendant violated a September 30, 1981, court order requiring that all files, books and records relating to the Rapanos account be immediately returned to the Rapanos' place of business, by not timely returning the documents. Defendant defended on the grounds that the order was ambiguous and that he thought it only applied to the Rapanos bank account and related accounting books.

4) That in violation of a court order preventing harassment and intimidation of Rapanos' employees, defendant threatened Dennis Fritz, the court-appointed temporary comptroller for Rapanos Enterprises, by telling Fritz, "I will get you for this. I'll get you." Defendant denied making this statement.

5) That defendant improperly retained rental payments in the amount of $2,350 from the rental of a piece of property known as the "Bauknecht property" in violation of the temporary restraining order which required that all income from the Enterprises' business had to be deposited into the Rapanos account. Defendant claimed that the property was registered in his wife's name and, therefore, he had the right to keep income from its rental.

6) That defendant had the advertisement on six billboards belonging to Rapanos Enterprises painted out without Nicolaos Rapanos's or the court's permission. In defense, defendant alleged that the temporary restraining order was ambiguous and that he had relied upon his attorney's advice that he could white-out the signs.

7) That prior to the initiation of a civil litigation against defendant by his brother, defendant deeded the Lutz property to his wife.

8) That on March 4, 1982, defendant wrote a check to his wife in the amount of $2,400 out of Rapanos Enterprises monies without proper approval. Defendant claims that he was justified in his actions since the $2,400 was in payment of property taxes.

The trial judge ruled that only four of the actions taken by defendant constituted criminal contempt. The four contemptuous acts, according to the court, were: (1) execution of the August 26, 1981, mortgage; (2) failure timely to return business documents as required by the court's order; (3) retaining rental receipts on the Bauknecht property; and (4) issuance of the $2,400 check to his wife.

Defendant now claims that his conviction on each of these four counts was erroneous since his conduct did not meet the requisite standard for a finding of criminal contempt. In reviewing the sufficiency of the evidence in an appeal from a bench trial, this Court must determine whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find essential elements of the crime proven beyond a reasonable doubt, or whether the court clearly erred. *People v Simpson,* 132 Mich App 259, 263; 347 NW2d 215 (1984), *lv granted* 419 Mich 922 (1984).

To support a conviction of criminal contempt, two elements must be proven beyond a reasonable doubt. *Michigan ex rel Wayne Prosecutor v Powers,* 97 Mich App 166, 171; 293 NW2d 752 (1980). Those two elements are: (1) that the individual engaged in a wilful disregard or disobedience of the authority or orders of the court, and (2) that the contempt must be clearly and unequivocally shown. *People v Matish,* 384 Mich 568, 572; 184 NW2d 915 (1971). Additionally, although no Michi-

gan courts have required this element, the United States Supreme Court and several federal courts have required that the contemptuous act must be shown to pose an imminent threat to the administration of justice, not merely an affront to the sensitivities of the judge. *In re Little,* 404 US 553, 555; 92 S Ct 659; 30 L Ed 2d 708 (1972). *Gordon v United States,* 592 F2d 1215, 1217 (CA 1, 1979), *cert den* 441 US 912 (1979). In the case at bar, defendant claims that his conviction on four counts of contempt was not supported by the evidence since, with regard to each count, according to defendant, the record did not establish that defendant clearly and unequivocally violated the court order or that violation of the court order did not constitute an obstruction of justice.

The first count of contempt of which defendant was convicted concerned his action in obtaining a mortgage on the 10 Plex property in the amount of $100,000 on August 26, 1981. First, defendant claims that since the 10 Plex property is titled solely in the name of defendant and his wife, the August 4, 1981, temporary restraining order was not applicable to this transaction since the temporary restraining order only prohibited actions with regard to property that was jointly owned by defendant and his brother. The August 4, 1981, temporary restraining order provided in part that defendant was restrained and enjoined from taking any actions, including encumbering any business and investment property, with respect to the said businesses and real property of Rapanos Enterprises without the approval of Nicolaos Rapanos.

A review of the record in this case establishes that defendant did clearly and unequivocally violate this court order contrary to what defendant claims on appeal. The transcript shows that defen-

dant knew at the time he took out the mortgage in question that the 10 Plex property was part of the disputed property in which defendant's brother claimed to own one-half interest. In fact, the complaint in the civil suit initiated by Nicolaos Rapanos on August 4, 1981, expressly stated that Nicolaos Rapanos believed that he had the right to one-half ownership of the 10 Plex property despite the fact that the property was titled in defendant's name. Moreover, Nicolaos Rapanos testified at defendant's criminal contempt trial that defendant had previously brought a motion to compel Nicolaos Rapanos to help pay the debt on the mortgage encumbering the 10 Plex property. Therefore, the record shows that defendant clearly and unequivocally violated the temporary restraining order by encumbering property that was alleged to be part of the business and real property belonging to Rapanos Enterprises. *Craig v Kelley*, 311 Mich 167; 18 NW2d 413 (1945).

Moreover, defendant's claim that the element of obstruction of justice was not established beyond a reasonable doubt through the evidence at trial is also without merit. Nicolaos Rapanos testified at trial that defendant had been engaging in a consistent pattern of taking out mortgages to borrow money which placed Nicolaos Rapanos into debt and posed a financial threat to the brothers' business. This conduct prevented the orderly disposition of the civil case initiated by Nicolaos Rapanos. Hence, the evidence at trial supported the fact that defendant's conduct resulted in an obstruction of justice and the trial court's finding was not clearly erroneous.

Defendant's next claim of error concerns his conviction for contempt with regard to his late return of Rapanos Enterprises' files. The trial court on September 30, 1981, ordered defendant to

immediately return all the files, books, records and documents relating to the Rapanos Enterprises account to the Rapanos' place of business in Midland, Michigan. Defendant claims that his conviction for criminal contempt was erroneous since, in his opinion, the files that he returned within an eight-month period after this order were not covered by the court order and, therefore, they were not returned tardily. In addition, defendant claims that the term "Rapanos account" corresponds only to the Rapanos Enterprises bank account and the related accounting books.

However, the testimony at trial by Rapanos' bookkeeper, Betty Wagoner, established that the term "Rapanos account" had a much broader definition as understood by those employed by the Rapanos brothers. Wagoner testified that there was a bank account called the Rapanos account but the term Rapanos account also related to the business ledgers, journals, and work papers related to the investments made by Rapanos Enterprises. Hence, the record clearly and unequivocally establishes that defendant violated the court order. Therefore, his claim that this contempt charge was not substantiated by the evidence is without merit.

Defendant also contends that even if it was established that he violated the court order, his late return of the files and records did not constitute an obstruction of justice since the records were all eventually returned to the business premises. However, the testimony at trial by Elaine Rapanos, Nicolaos Rapanos's wife, established that the unreturned files held by defendant were the primary documents which supported her husband's theory in his civil complaint against defendant. Without those documents, according to Elaine Rapanos, there was great difficulty in carrying on the day-to-day concerns of the business and

in determining which party would be entitled to any given parcel of property involved in the lawsuit. Thus, there exists ample evidence supporting the trial court's conclusions.

In addition to the above claims, defendant also argues on appeal that the retention of rental income from the Bauknecht property by defendant's wife also did not clearly and unequivocally constitute a violation of the court's order. The trial court's order of September 30, 1981, stated:

"All income that was deposited into the Rapanos account as of June, 1981, shall continue to be deposited into said account and shall be properly credited to the account of the party or parties from which said income came; i.e., income from property, title to which is in John A. Rapanos' name only, shall be credited to his account; and property, title to which is in Nicolaos A. Rapanos' name only, shall be credited to his account; and income from property held by Nicolaos A. Rapanos and John A. Rapanos as tenants in common, shall be credited one-half to John A. Rapanos and one-half to Nicolaos A. Rapanos."

On appeal, defendant contends that since the order did not prohibit him from retaining income from property held in the name of his wife, defendant did not violate the order by retaining income from the Bauknecht property, since it was titled in his wife's name. However, the evidence at trial clearly showed that this was property that was being purchased by Rapanos Enterprises and being rented out to third parties. Payments on the land contract were being made to the owners from the Rapanos account and, prior to June, 1981, all of the rentals from this parcel of property were likewise being deposited into the Rapanos account. Moreover, the dispute over the ownership of this property was part of the civil lawsuit brought by

Nicolaos Rapanos. Therefore, the evidence at trial clearly showed that this property was covered by the order of the court. Defendant knew that these rentals had always been considered Rapanos account property and the evidence at trial clearly established this.

Moreover, contrary to defendant's argument on appeal, the retention of the rental income from the Bauknecht property constituted a significant obstruction of justice since, by hampering the business operations of Rapanos Enterprises defendant's conduct caused a significant delay in the orderly disposition of the underlying case. Therefore, this element of his criminal contempt charge was sufficiently established beyond a reasonable doubt at trial.

Defendant next contends that his issuance of a $2,400 check to his wife for payment of taxes on the Giovanni's Pizza, Inc., property was not contemptuous conduct since it was justified by the trial court's instruction to plaintiff's attorney to pay this account. The evidence established at trial that on March 4, 1982, a check in the amount of $2,400 was issued by defendant to his wife and cashed by defendant's wife. Defendant did not have the approval of Dennis Fritz on this check, contrary to what was required by the September 30, 1981, preliminary injunction. That provision in the preliminary injunction stated that defendant was to continue to have the primary management responsibilities for the operation of Giovanni's Pizza, Inc., but that all checks written by defendant for the necessary business expenses of this corporation were required to be approved by Dennis Fritz. According to the evidence at trial, when Fritz refused to sign the check because he believed that such action would violate the preliminary injunction, defendant went ahead and wrote the

check and his wife cashed it without Fritz's approval.

On June 3, 1983, the trial judge instructed complainant's attorney and complainant to approve payment of this $2,400 amount to the landlord. Defendant now claims that his action was justified because of the trial judge's instruction to complainant's attorney in the civil case. However, the evidence at trial clearly shows that defendant violated the direct order of the preliminary injunction since he issued the check without approval by Fritz or Nicolaos Rapanos. It is simply not a justification for claiming that one did not clearly and unequivocally violate a court order. The fact that the court instructed complainant's attorney to approve this expenditure after complainant violated the restraining order does not excuse defendant's actions. Hence, defendant's conduct was clearly in violation of the court order, which was unambiguous in its terms, and his violation of that order was established by the evidence at trial.

In addition, defendant's conduct was shown at trial to be an interference with the administration of justice, since his conduct further complicated the civil case. Moreover, his conduct resulted in additional confusion and delay in settling the disputes involved in the civil suit brought by Nicolaos Rapanos. Therefore, the defendant's claim that this element of his criminal contempt charge was not established at trial is without merit.

We next consider whether the evidence fully supports the trial judge's finding that defendant did not rely in good faith upon his attorney's advice in violating the court's orders.

The trial judge in the case at bar found that defendant's claim of good faith reliance upon his attorney's advice was without merit since according to the trial judge defendant had been charged

with 37 counts of contempt in the civil action, had threatened an employee of Rapanos Enterprises as a result of the employee's testimony at trial, and had told his bookkeeper that defendant could do anything he wanted to. This conduct according to the court established the fact that defendant intentionally, wilfully, and in bad faith disobeyed the orders of the court.

Findings of fact made by a lower court will not be overturned by this Court unless it is determined that they were clearly erroneous. GCR 1963, 517.1. The federal courts have ruled that when an individual in good faith relies upon his attorney's advice or interpretation of a court order, he cannot be found guilty of criminal contempt since the element of an intentional violation of the court's order has not been established. *Proudfit Loose Leaf Co v Kalamazoo Loose Leaf Binder Co,* 230 F 120, 132 (CA 6, 1916). Hence, this Court must determine whether the trial judge's finding of bad faith was clearly erroneous.

Since the evidence at trial supports the trial judge's finding, we cannot say that the trial judge's finding was clearly erroneous. The central issue of dispute in this case was the ownership of property. Therefore, defendant knew that the trial court wished to maintain the status quo with regard to each parcel of property owned by Rapanos Enterprises until the civil suit was settled. Moreover, defendant's own actions clearly established that he acted in bad faith when he disobeyed the orders of the court. One of his employees testified at trial that defendant stated to him after the employee had testified at trial that defendant would "get him" because he testified against defendant. In addition, defendant's bookkeeper stated that defendant told her that he could do anything he wanted to despite the court order

when she tried to stop defendant from taking files from the office contrary to the temporary restraining order. Hence, there was sufficient evidence at trial to support the trial judge's finding of bad faith.

Defendant argues, however, that the trial judge merely relied upon the fact that defendant had been charged with 37 counts of contempt as grounds for his finding of bad faith. This argument is without merit since, as was stated above, the trial judge relied upon other evidence presented at trial to make his finding of fact. Hence, the finding by the trial judge was not clearly erroneous.

We next consider whether defendant was properly charged with criminal rather than civil contempt with regard to the return of the business records.

The testimony at trial established that after the September, 1981, court order requiring defendant to return all records in his possession to Rapanos Enterprises, defendant eventually returned most of them over an eight-month period of time. Defendant now claims that he should have been found guilty only of civil contempt due to the fact that most of these records were ultimately returned.

This Court in *Harvey v Lewis,* 10 Mich App 709; 160 NW2d 391 (1968), defined the distinction between civil and criminal contempt. Proceedings for criminal contempt, according to the Court, are prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made to enforce those rights and to administer the remedies to which the court has found the parties entitled. *Id.,* 715. Another test of whether contempt is civil or criminal in-

volves consideration of the subsequent conduct: the "after-the-fact determination". *Id.,* 716. Hence, where an individual's conduct has altered the status quo so that it cannot be restored or the relief intended has become impossible, there is criminal contempt; yet, where the individual's noncompliance with the court order is such that the status quo can be restored and it is still possible to grant the relief originally sought, there is civil contempt. *Id.,* 716.

We conclude that defendant's conduct constituted criminal rather than civil contempt. The evidence at trial showed that defendant possessed hundreds of files and took close to eight months to return those files even though the court had ordered defendant to return them immediately. Even after the court entered its order, defendant still attempted to take more files from the Rapanos Enterprises office in violation of the court order and told the company's bookkeeper that he could take them because he could do anything he wanted to. Hence, this conduct on the part of defendant satisfies the first test of criminal contempt stated in *Harvey;* namely, that defendant's conduct constituted an affront to the dignity of the court. *Id.,* 715.

Moreover, there was also testimony at trial to show that defendant's failure promptly to return the files in question materially hampered Nicolaos Rapanos's attempt to prepare for the civil suit against defendant. In addition, defendant's retention of many of the records disrupted Nicolaos Rapanos's ability to continue running the brothers' business properly. Therefore, even though defendant ultimately returned the files, the status quo could not be restored since defendant's conduct impaired the business operations of Rapanos Enterprises and caused Nicolaos Rapanos substan-

tial work and dely in preparing this case against defendant. Thus, consistent with the second test for criminal contempt stated in *Harvey,* defendant's conduct was properly characterized by the trial judge as cirminal contempt. *Id.,* 716. Defendant's argument that the criminal contempt charge against him should have been dismissed is entirely without merit.

We next consider whether the trial judge committed error requiring reversal by failing to disqualify himself *sua sponte* from the criminal proceedings against defendant.

GCR 1963, 912.2(2) provides that a trial judge is disqualified when he cannot impartially hear a case due to the fact that he is personally biased or prejudiced for or against a party. Before a trial judge will be disqualified, an actual showing of prejudice must be established. *In the Matter of Hirsch,* 116 Mich App 233, 242; 323 NW2d 349 (1982), *modified* 413 Mich 943 (1982).

On appeal, defendant contends that, since the trial judge disqualified himself from hearing a criminal contempt case brought by defendant against Nicolaos Rapanos after the instant litigation, the trial judge should have disqualified himself *sua sponte* in the instant litigation. Moreover, defendant claims that since the trial judge relied upon improper evidence in the case at bar actual prejudice was established.

The trial judge's subsequent disqualification order in the related case only shows that the judge may have been prejudiced against defendant after or as a result of the instant trial. The order expressly states that the trial judge was only disqualifying himself since he had formed personal opinions about the parties as a result of the prior litigation against defendant. Therefore, this order of disqualification does not establish that the trial

judge was prejudiced against defendant at the time he heard the instant criminal contempt case.

Moreover, the fact that the trial judge may have relied upon improper evidence in finding defendant guilty of criminal contempt does not help establish actual prejudice in the case at bar, contrary to what defendant argues. Even if the trial judge improperly relied upon some of the allegedly frivolous contempt charges brought by Nicolaos Rapanos against defendant and upon statements made in the preliminary injunction, these facts do not in any way show that the trial judge had actual prejudice against defendant.

Defendant has failed to establish that at the time of his criminal contempt trial the judge was actually prejudiced against him. Therefore, his claim is without merit.

Affirmed.