# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT M. ROLLER,

Plaintiff/Cross Defendant-Appellee,

v

PATRICIA L. ROLLER,

Defendant/Cross Plaintiff-
Appellant.

UNPUBLISHED
January 14, 2016

No. 324130
Livingston Circuit Court
LC No. 09-041714-DM

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant, Patricia L. Roller, appeals as of right the circuit court's September 29, 2014 order finding her in criminal contempt of court for having the parties' minor child baptized without informing plaintiff, Scott M. Roller, and requiring her to pay plaintiff $9,611 in damages, attorney fees, and costs. We reverse.

## I. BACKGROUND

Plaintiff and defendant married in 2003, lived together until 2009, and divorced in 2010. They share joint legal custody of their only child, who was born in 2006. Since the judgment of divorce between them was entered in February 2010, various custody and parenting time disputes have resulted in relatively consistent court involvement in the parties' and the child's lives.[1] This appeal arises out of plaintiff's January 2013 motion to have the parties' child baptized at St. Mary's Church in Pinckney, Michigan, the church that he and the child have attended since approximately 2009. Plaintiff asserted that he and defendant were both Roman Catholic and that defendant had been uncooperative with his efforts to provide the child with a religious education. Defendant did not answer the motion. In March 2013, the circuit court entered an order granting plaintiff's motion and allowing the child to be baptized. Unbeknownst to plaintiff, defendant had already had the child baptized two years earlier. In May 2013, after he

---

[1] This is not the first time that the parties have been before this Court relating to custody and parenting time disputes. See *Roller v Roller*, unpublished opinion per curiam of the Court of Appeals, issued January 26, 2012 (Docket No. 300543).

-1-

learned of the prior baptism through Rebecca Keiser, the Director of Religious Education at St. Mary's, plaintiff filed a motion to enforce the February 2010 divorce judgment and hold defendant in contempt of court. Plaintiff alleged that defendant's secret baptism of the child and concealment of that baptism thereafter constituted a violation of the parties' divorce judgment, which required the parties' parent coordinator to decide custody disagreements in the event that they could not agree.

A hearing on plaintiff's motion was held before a Friend of the Court (FOC) referee in July 2013.[2] Plaintiff testified that he and the child had attended St. Mary's since approximately 2009, that he wished to enroll the child in catechism classes and have the child baptized, and that defendant did not want the child to have a religious education. Defendant testified that she had the child baptized in January 2011 without informing plaintiff. She explained that she had requested plaintiff's cooperation in having the child baptized and that plaintiff was the one who was uncooperative. It was defendant's position that she did not violate any order because there was not a specific order regarding religious matters. She also explained that she was unaware that a child could only be baptized once. Plaintiff relied on the divorce judgment's award of joint legal custody, arguing that religious decisions were decisions requiring informed agreement between the parties. Plaintiff also pointed to the fact that defendant had consistently remained silent after he filed the motion seeking to have the child baptized despite knowing that the child had already been baptized. Plaintiff sought a monetary award in his favor for the expenses related to pursuing the child's second baptism, attorney fees, and costs. After hearing the parties' testimony and arguments at that hearing; testimony from Dr. Charlene Kushler and Sue Hamilton, who both served as parenting time coordinators for the parties since their divorce, Michelle Sunny, a clinical psychologist who served as the parties' "communication therapist," and Keiser at a second hearing; defendant's testimony at a third hearing; and reviewing the parties' written arguments, the FOC referee issued a recommendation that the contempt matter be heard before the circuit court, and the matter was heard before the circuit court shortly thereafter.

At that hearing, the circuit court explained to the parties that this matter involved criminal, not civil, contempt, which was recognized in the FOC referee's recommendation. Defendant interjected, arguing that, if this matter was truly criminal in nature, she was entitled to various due process rights. The circuit court thereafter summarized the issues and potential consequences to defendant, accepted her not guilty plea, and adjourned the matter for an evidentiary hearing. At the subsequent hearing, after reviewing the FOC hearing record and hearing the parties' arguments,[3] the circuit court concluded that defendant deliberately disobeyed an order and that she was guilty of criminal contempt beyond a reasonable doubt. Although it considered jail time as a punishment, the circuit court eventually concluded that the appropriate punishment was for defendant to pay $9,611 to plaintiff. This appeal followed.

---

[2] Various other issues involving parenting time and custody were raised before and heard at the July 2013 referee hearing.

[3] No testimony was taken at the evidentiary hearing before the circuit court. The circuit court considered the testimony taken before the FOC referee only.

## II. ANALYSIS

On appeal, defendant raises two related arguments. First, she argues that she was denied her constitutional right to due process. Second, she argues that the lack of a specific order regarding the child's religious upbringing precludes a finding of contempt. As discussed below, we agree in both respects.

## A. STANDARDS OF REVIEW

A trial court's decision to issue a contempt order is reviewed for an abuse of discretion. *Deal v Deal*, 197 Mich App 739, 743; 496 NW2d 403 (1993). A trial court's factual findings during a contempt proceeding are reviewed for clear error. *Brandt v Brandt,* 250 Mich App 68, 72-73; 645 NW2d 327 (2002). Whether a party has been afforded due process is a question of law that is reviewed de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

## B. DUE PROCESS

There is a fine line between civil and criminal contempt. *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009). Both can result in jail time for failing to abide by a court order. *Id*. One distinction between the two, however, is whether the circuit court is punishing a party for violating a court's order or holding a party until he or she complies with a court's order. *Id*. at 455. If the first, the court is exercising its criminal contempt power. *Id*. If the second, the court is exercising its civil contempt power. *Id*. In this case, it is undisputed that, ultimately, the circuit court was exercising its criminal contempt power. Because of that, defendant was entitled to "some, but not all, of the due process safeguards of an ordinary criminal trial," *In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987), because "[n]o person may be deprived of life, liberty, or property without due process of law." *In re Contempt of Henry*, 282 Mich App 656, 669; 765 NW2d 44 (2009), citing US Const Am, XIV; Const 1963, art 1, § 17; *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 605-606; 683 NW2d 759 (2004). "A party charged with criminal contempt is presumed innocent, enjoys the right against self-incrimination, and the contempt must be proven beyond a reasonable doubt." *Porter*, 285 Mich App at 456. In a criminal contempt proceeding, the party must be given an adequate opportunity to prepare a defense and secure counsel. *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007). Conversely, in a civil contempt proceeding, the party must be given notice and an opportunity to present a defense. *Porter*, 285 Mich App at 456-457. Stated simply, "[a] defendant charged with contempt is entitled to be informed not only whether the contempt proceedings are civil or criminal, but also the specific offenses with which he or she is charged." *DeGeorge*, 276 Mich App at 592.

In this case, we conclude that defendant was deprived of her procedural due process safeguards. From the outset, she was not informed of the criminal nature of the proceeding against her and was denied her right against self-incrimination. Plaintiff's May 2013 motions made no mention of criminal contempt. At the hearings before the FOC referee, neither the referee nor the parties clarified whether the contempt hearing was civil or criminal in nature. Moreover, before giving testimony that could only be described as self-incrimination, defendant was not advised of the criminal nature of the proceeding or her right against self-incrimination. While it is true that, after filing objections to the FOC referee's recommendation, the circuit

court eventually clarified that the proceedings were criminal in nature, that after-the-fact clarification did not cure the prior due process violations. In fact, the circuit court relied on defendant's self-incriminating testimony in reaching its decision despite the fact that defendant was never advised of her right against self-incrimination before giving that testimony. "A defendant cannot be found guilty of criminal contempt when the proceedings lacked any semblance of a criminal trial[.]" *Ann Arbor v Danish News Co*, 139 Mich App 218, 231; 361 NW2d 772 (1984). Accordingly, because defendant was deprived of her constitutional right to due process, we conclude that the trial court erred in issuing an order finding her in criminal contempt.

## C. UNDERLYING ORDER

While unnecessary in light of the resolution above, we will also briefly address defendant's second argument. Although defendant characterizes it as a challenge to the specificity of the parties' divorce judgment, it appears as though her argument could be more accurately characterized as a challenge to the sufficiency of the evidence presented at the contempt hearings before the FOC referee and the circuit court. That is, defendant contends that there was insufficient evidence presented to find her guilty beyond a reasonable doubt of violating any specific terms of the parties' divorce judgment.

To prove criminal contempt beyond a reasonable doubt, the following must be established: "(1) that the individual engaged in wil[l]ful disregard or disobedience of the authority or orders of the court, and (2) that the contempt must be clearly and unequivocally shown." *In re Rapanos*, 143 Mich App 483, 488; 372 NW2d 598 (1985). After a thorough review of the record, we conclude that there was insufficient evidence to find that defendant "clearly and unequivocally" "wil[l]ful[ly] disregarded or disobeyed" the terms of the parties' divorce judgment. Plaintiff, the FOC referee, and the circuit court all relied on the fact that the parties share joint legal custody of the child. That fact is undisputed. " 'Joint custody' means, in part, that the parents will share decision-making authority for the important decisions affecting the welfare of the child." *Shulick v Richards*, 273 Mich App 320, 327; 729 NW2d 533 (2006), citing MCL 722.26a(7)(b). In our view, the record does not support a conclusion that, *beyond a reasonable doubt*, defendant willfully disregarded that shared decision-making authority by having the child baptized without plaintiff's consent. A finding of criminal contempt requires an unequivocal and clear violation of a specific provision of the order at issue, and the general grant of joint custody in this case is simply insufficient to constitute an unequivocal or clear order requiring the parties to agree on decisions relating to the child's baptism. Accordingly, because there was insufficient evidence presented to prove that defendant violated a specific provision in the divorce judgment beyond a reasonable doubt, we conclude that the trial court erred in finding defendant in criminal contempt of court.

## III. CONCLUSION

In sum, because defendant was denied her constitutional right to due process and because there was insufficient evidence to find defendant in criminal contempt beyond a reasonable doubt, we conclude that the circuit court erred in doing so. We therefore reverse the circuit court's September 29, 2014 order finding defendant in criminal contempt and requiring her to pay plaintiff $9,611 and remand this matter for the entry of an order consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, a question of public policy involved.


/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien