*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Contempt of NICHOLAS SOMBERG.

PEOPLE OF THE CITY OF ROSEVILLE,

Plaintiff-Appellee,

v

TAYLOR NICHOLAS TRUPIANO,

Defendant,

and

NICHOLAS SOMBERG,

Appellant.

UNPUBLISHED
October 15, 2020

No. 344041
Macomb Circuit Court
LC No. 2017-000114-AR

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Appellant, Nicholas Somberg, appeals as of right the order of the circuit court affirming the order of 39th District Chief Judge Joseph F. Boedeker holding appellant in contempt for violation of Michigan Supreme Court Administrative Order No. 1989–1, as amended 493 Mich cxviii (2013), in proceedings in front of 39th District Judge Marco A. Santia. We affirm.

AO 1989-1 requires persons seeking to film court proceedings to submit their requests to the judge hearing the case before recording. Appellant, an attorney, was arguing a case in front of Judge Santia while appellant's associate filmed the proceedings at appellant's direction without Judge Santia's permission. When Judge Santia discovered that appellant had someone filming the proceedings in violation of AO 1989-1, he stated that he was holding appellant in contempt and set a hearing in front of Judge Boedeker. At the hearing in front of Judge Boedeker, appellant stipulated that the transcript of the hearing in front of Judge Santia "contains the total summation of what actually transpired." After listening to appellant's arguments and allowing appellant to

-1-

present testimony from Timothy Tomlinson, opposing counsel at the hearing in front of Judge Santia, Judge Boedeker found appellant's conduct at the hearing in front of Judge Santia contemptuous, held appellant in contempt, and fined him $100. Appellant appealed this ruling to the circuit court, and that court affirmed.

On appeal to this Court, appellant contests alleged errors both in the circuit court's ruling and in Judge Boedeker's holding appellant in contempt, but the crux of appellant's argument on appeal is that the Judge Boedeker abused his discretion by holding him in contempt.[1] We disagree.

"We review for an abuse of discretion a trial court's decision to hold a party or individual in contempt." *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). "The appellate court may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id*.

A court's power to hold a party in contempt "is inherent in the judiciary as generally established in Const 1963, art 6, § 1." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 708; 624 NW2d 443 (2000) (*In re Contempt of ACIA*). The Legislature has reinforced this inherent power by codifying "the common-law power of courts to punish for contempt in MCL 600.1701, *et seq*." *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 499; 608 NW2d 105 (2000).

Courts have two forms of the contempt power: civil and criminal. *In re Contempt of ACIA*, 243 Mich App at 711. Civil contempt is either coercive (attempting to compel a contemnor to comply with a court order) or compensatory (attempting to compensate any person who suffered a loss or injury due to the contemnor's misconduct). *In re Contempt of Dougherty*, 429 Mich 81, 97-98; 413 NW2d 392 (1987). In contrast, criminal contempt is intended to punish a "contemnor for past conduct that affronts the court's dignity." *In re Contempt of ACIA*, 243 Mich App at 713.

Appellant was held in criminal contempt as punishment for violating AO 1989–1. As stated earlier, AO 1989-1 requires persons seeking to film court proceedings to submit their requests to the judge hearing the case before recording. There is no dispute that an associate of appellant, at appellant's direction, filmed the proceedings in front of Judge Santia without first

---

[1] We agree with appellant that the circuit court erred when it concluded that Judge Santia held appellant in contempt. Though the contempt was committed in Judge Santia's immediate view, he deferred punishment and set the contempt charge for a hearing in front of Judge Boedeker. When a court defers "summary punishment of contumacious behavior," the contempt charge is to be heard in front of another judge. *In re Contempt of Scharg*, 207 Mich App 438, 439-440; 525 NW2d 479 (1994). Thus, we agree with appellant that Judge Boedeker was the judge that held appellant in contempt. But, for the reasons explained in this opinion, Judge Boedeker's holding appellant in contempt was not erroneous, so the circuit court's error concluding that Judge Santia held appellant in contempt was ultimately harmless.

obtaining Judge Santia's permission. Appellant therefore violated AO 1989-1, and appellant could be held in contempt for that violation. See MCL 600.1701(c) (stating that courts have the power to hold an attorney in contempt for a willful violation of a lawful court order).

Appellant does not seriously dispute that the court had *the power* to hold him in contempt for violating a court order,[2] but instead argues that the court's exercise of its power in this instance was error. In support of his argument, appellant focuses on two points. First, appellant argues that his violation of AO 1989-1 was not "willful" as required to hold him in contempt. Second, appellant argues that his conduct did not "alter[] the status quo of the court room," which he contends is also necessary for a court to hold someone in contempt.[3] Because appellant was found to be in criminal contempt, the contempt must be proven beyond a reasonable doubt. See *In re Contempt of ACIA*, 243 Mich App at 714.

Addressing appellant's first argument, it is true that "[i]n order for there to be a contempt, it must appear that there has been a wilful disregard or disobedience of the authority or orders of the court." *People v Matish*, 384 Mich 568, 572; 184 NW2d 915 (1971). Appellant argues that his violation of AO 1989-1 could not have been willful because, as he told the lower courts, he did not know he was violating AO 1989-1 by filming the proceedings in front of Judge Santia without the judge's permission. Appellant seems to believe that this Court must accept as fact his assertion that he did not knowingly violate AO 1989-1. This is incorrect. Judge Santia was face-to-face with appellant when he violated AO 1989-1 and stated that he was not aware of AO 1989-1's

---

[2] In a single sentence in his brief, appellant states, "Applying principles of parsimony, this Court should dismiss the contempt petition and declare [appellant] had not substantially violated the Court Rule by failing to file a ministerial petition in a timely fashion." Yet appellant's own recitation of the facts in his brief demonstrate that he violated AO 1989-1, so his assertion that he "substantially" did not is, at best, confusing.

[3] Appellant lists a total of five "elements" of contempt that he states were not proven in this case, but he only provides argument on the two listed above. Appellant's failure to adequately brief his arguments related to the other three "elements" of contempt amounts to an abandonment of those arguments. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

We also note that this Court has repeatedly stated that there are only "two elements" of criminal contempt: "(1) that the individual engaged in a wilful disregard or disobedience of the authority or orders of the court, and (2) that the contempt must be clearly and unequivocally shown." *In re Contempt of Rapanos*, 143 Mich App 483, 488; 372 NW2d 598 (1985). See also *People v MacLean*, 168 Mich App 577, 579; 425 NW2d 185 (1988); *City of Pontiac v Grimaldi*, 153 Mich App 212, 215; 395 NW2d 47 (1986); *In re Contempt of Dorsey*, 306 Mich App 571, 591; 858 NW2d 84 (2014), aff'd in part, vacated in part on other grounds, *In re Contempt of Dorsey*, 500 Mich 920 (2016). While appellant recites in his brief on appeal the language stating that contempt must be "clearly and unequivocally shown," he never argues that his contempt was not clearly and unequivocally shown, so we do not address that element.

requirements. Judge Santia could choose whether or not to believe appellant's statements. After Judge Santia heard appellant's voice and saw his demeanor, the judge (1) determined that appellant's statements that he did not knowingly violate AO 1989-1 were not credible and (2) stated that he intended to charge appellant with contempt and scheduled a hearing in front of Judge Boedeker.

At the hearing in front of Judge Boedeker, appellant did not testify but instead made a statement to Judge Boedeker during which he stated that he did not know he was violating AO 1989-1 by filming the proceedings in front of Judge Santia without the judge's permission. While Judge Boedeker was understanding of appellant's position that he did not knowingly violate AO 1989-1, Judge Boedeker noted that appellant, as an attorney, was generally aware of the court rules governing his behavior, and so he agreed with Judge Santia's assessment that appellant's conduct of violating AO 1989-1 was contemptuous. That is, Judge Boedeker implicitly determined that appellant willfully violated AO 1989-1, despite appellant's statements to the contrary. As an appellate court, we defer to credibility determinations made by lower courts that had the opportunity to see and hear the witnesses. See *In re Contempt of Henry*, 282 Mich App at 668. In light of (1) the fact that appellant is an attorney and as such is generally familiar with the rules governing the courts and (2) Judge Boedeker's determination that respondent was not credible when he said that he did not knowingly violate AO 1989-1, we conclude that Judge Boedeker's finding beyond a reasonable doubt that appellant willfully violated AO 1989-1 was not clearly erroneous. *Id.*

Turning to appellant's other challenge, this Court has stated that criminal contempt is appropriate "where an individual's conduct has altered the status quo so that it cannot be restored or the relief intended has become impossible[.]" *In re Contempt of Rapanos*, 143 Mich App 483, 497; 372 NW2d 598 (1985). Appellant contends that this is an "element" of criminal contempt that must be proven beyond a reasonable doubt, but the case he cites to for this assertion, *Harvey v Lewis*, 10 Mich App 709, 716-717; 160 NW2d 391 (1968), does not state as much. Instead, it summarizes that criminal contempt, as opposed to civil contempt, is appropriate where an individual's conduct "has altered the status quo so that it cannot be restored." *Id.* Moreover, this Court has repeatedly stated that there are only "two elements" of criminal contempt, and neither element is that the contemnor's conduct altered the status quo so that it cannot be restored. See *In re Contempt of Rapanos*, 143 Mich App at 488; *People v MacLean*, 168 Mich App 577, 579; 425 NW2d 185 (1988); *City of Pontiac v Grimaldi*, 153 Mich App 212, 215; 395 NW2d 47 (1986); *In re Contempt of Dorsey*, 306 Mich App 571, 591; 858 NW2d 84 (2014), aff'd in part, vacated in part on other grounds, *In re Contempt of Dorsey*, 500 Mich 920 (2016). At any rate, assuming that altering the status quo so that it cannot be restored is an "element" of criminal contempt that must be proven to hold an individual in contempt, there was competent evidence to support a finding of this element beyond a reasonable doubt.

The hearing before Judge Santia received media attention, and media outlets were at the hearing filming it. These outlets received Judge Santia's permission before filming as required by AO 1989-1. It was in this context that Judge Santia discovered that appellant, an attorney, was also filming the proceedings. However, unlike the media outlets, appellant had not requested Judge Santia's permission to film as required by AO 1989-1. When Judge Santia found out that appellant had already filmed the proceedings without permission, the status quo of Judge Santia's courtroom was altered; before, only persons who had received Judge Santia's permission as

-4-

required by AO 1989-1 were filming the proceedings, but now appellant had done so without permission. Because appellant had already filmed the proceedings without permission, there was no way to restore the status quo.[4] That is, appellant's conduct altered the status quo so that it could not be restored. Thus, criminal contempt was appropriate, and Judge Boedeker did not err by so finding.

In sum, it was within the lower court's power to hold appellant in contempt for a willful disregard of a court order. The contempt was committed in the immediate view of Judge Santia, and he stated that he intended to hold appellant in contempt but deferred the ultimate decision whether to hold appellant in contempt to Judge Boedeker. Judge Boedeker agreed with Judge Santia that appellant's conduct was contemptuous, and held appellant in contempt, fining him $100. After a review of the record and appellant's argument, we conclude that Judge Boedeker's holding appellant in contempt was not an abuse of discretion. To so hold, Judge Boedeker found that (1) appellant willfully violated of AO 1989-1 in the proceedings in front of Judge Santia and (2) appellant's conduct altered the status quo of that court so that it could not be restored. Based on the record, there was competent evidence to support those findings, and the findings were not clearly erroneous. *In re Contempt of Henry*, 282 Mich App at 668.

In his final argument, appellant contends that the circuit court erred by dismissing his appeal as untimely. The circuit court never stated that it was dismissing appellant's appeal for being untimely, so appellant's argument appears factually incorrect. While the circuit court gave appellant's arguments short shrift, its terse treatment of appellant's appeal appears to be based on the court's belief that appellant's arguments were wholly meritless and not on any procedural defects with appellant's claim. At any rate, any error the circuit court made dismissing appellant's appeal was harmless in light of our conclusion that Judge Boedeker did not abuse his discretion by holding appellant in contempt.

Affirmed.


/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[4] For clarity, while Judge Santia could have given appellant permission to film and then everyone would have been filming with permission, it still remains that someone filmed proceedings in front of Judge Santia without permission, and this could not be cured by granting appellant permission to film after the fact.