# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER RASTELLI,

        Petitioner-Appellee,

v

DANIEL ALEXANDER RASTELLI,

        Respondent-Appellant.

UNPUBLISHED
December 16, 2014

No. 317547
Grand Traverse Circuit Court
Family Division
LC No. 2013-010124-PP

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Respondent Daniel Alexander Rastelli appeals by right the trial court's order holding him in criminal contempt for violating an ex parte personal protection order (PPO). The court sentenced him to serve two days in jail and ordered him to pay a $500 fine. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

Jennifer Rastelli petitioned the court for a PPO in April 2013. The next day, the trial court entered a PPO prohibiting respondent from: (1) entering onto petitioner's property, (2) assaulting or physically harming petitioner, (3) preventing petitioner from acquiring her property that was in respondent's possession, (4) threatening to harm or kill petitioner, and (5) "purchasing or possessing a firearm." The order also prohibited respondent from committing stalking against petitioner "as defined by MCL 750.411h and MCL 750.411i", which "includes but is not limited to": (1) contacting petitioner by telephone, except to "communicate as to important issues regarding their minor child" and "to schedule parenting time for [respondent] and to set up exchanges for parenting time"; (2) delivering objects to petitioner's residential property; (3) approaching or confronting petitioner in public or private locales; (4) "sending mail or other communications to petitioner"; (5) following petitioner; and (6) "appearing at petitioner's workplace or residence."

Later that same month, respondent moved to modify, but not terminate, the PPO. The court modified the PPO in May 2013 to establish a lawful process by which respondent could remove his personal property from their home. The court acknowledged in the order that petitioner and respondent "approved of this Stipulation and Order in open court and do hereby approve of this Order of their own free act and deed."

-1-

Less than three weeks later, petitioner asked the court to order respondent to show cause why he should not be held in criminal contempt for violating the PPO. In her motion, petitioner alleged that respondent sent her several text messages that were unrelated to the welfare of their child or coordinating parenting time, used friends to relay threatening messages to her, and placed photographs of his assault rifles on her computer while it was in his possession with the expectation that the pictures would intimidate her.

Petitioner was the sole witness at the show-cause hearing. She testified that respondent placed two additional profiles on her computer while it was in his possession, and uploaded hundreds of photos and videos, including two photos of assault rifles that were apparently taken inside her home. She also claimed that she received "hundreds" of texts from respondent since the court issued the PPO. Although petitioner acknowledged that some of the texts were properly related to their child, the court admitted several texts, which were partially or fully unrelated to their child's welfare or arrangements for parenting time. After petitioner testified on direct, the trial court limited the scope of respondent's cross-examination; it prevented him from inquiring into whether petitioner previously reported to the police department that respondent was driving somewhere in a car loaded with firearms, whether she was alarmed or frightened by respondent's text messages and photo, and whether she provoked or consented to respondent's contacts.

After the close of proofs, the trial court found beyond a reasonable doubt that respondent violated the PPO:

> The petitioner in this matter has had eleven exhibits entered, two are pictures of assault rifles that were found on [petitioner's] computer, and testified to that they occurred on her computer after the date that the PPO was entered.

> Additionally there [are] multiple text messages, Exhibits 3 through 12, Number 5 was not admitted as an exhibit, that indicate that text messages were sent from [respondent] to [petitioner], and there is evidence in here that some of the text messages did not have any relationship at all to the minor daughter . . . .

> . . . I am very, very concerned that this order was just entered two months ago, or three months ago, and we are already here on a PPO violation. That doesn't bode well with respect to the kind of research that has been done with respect to families that have PPO's and minor children.

Accordingly, the trial court held respondent in criminal contempt. Respondent then appealed his conviction to this Court.

## II. CRIMINAL CONTEMPT

Respondent first argues the trial court erred in holding him in contempt because petitioner failed to show he violated the PPO. "In reviewing the sufficiency of the evidence in an appeal from a bench trial, this Court must determine whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find [all] essential elements of the crime proven beyond a reasonable doubt, or whether the court clearly erred." *In re Contempt of Rapanos*, 143 Mich App 483, 488; 372 NW2d 598 (1985). Circumstantial evidence and the

reasonable inferences arising from that evidence can be used to establish the elements. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The court's factual findings "must be affirmed on appeal if there is competent evidence to support them." *Brandt v Brandt*, 250 Mich App 68, 73; 645 NW2d 327 (2002). This Court also reviews de novo the proper interpretation of statutes. *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 75; 780 NW2d 753 (2010).

Respondent initially argues the trial court erred by issuing the PPO in the first place. However, he waived this claim of error by moving to modify the order, rather than terminate it, and then stipulating to the terms of the revised order. *People v Carter*, 462 Mich 206, 214-219; 612 NW2d 144 (2000). Consequently, we shall not consider the validity of the PPO.

A person who refuses or fails to comply with a PPO may be prosecuted for criminal contempt. MCL 600.2950a(23). The prosecutor or complainant must prove the violation beyond a reasonable doubt. MCR 3.708(H)(3); *People v Little*, 115 Mich App 662, 665; 321 NW2d 763 (1982). The prosecutor must prove criminal contempt by establishing that the defendant willfully disregarded or disobeyed the court's order or authority, that the contempt is clearly shown, and that the act posed an "imminent threat to the administration of justice," rather than merely offending "the sensitivities of the judge." *In re Contempt of Rapanos*, 143 Mich App at 488-489.

Respondent argues petitioner failed to prove that he stalked petitioner in violation of the PPO. The section of the PPO prohibiting stalking begins by incorporating the statutory definitions, see MCL 750.411h and MCL 750.411i, but then expands the definition to include additional activities. Here, respondent does not deny that he sent text messages to petitioner and placed pictures of assault rifles on her computer, which violated the PPO terms prohibiting telephone communications and purchasing or possessing a firearm. He contends, however, that the prohibited actions are, by themselves, innocuous and do not constitute "stalking" unless petitioner proved that they occurred in the context of stalking petitioner, i.e, that his activities harassed her with unconsented contact. He asserts that petitioner failed to meet this burden because she did not testify that respondent's conduct caused her to suffer emotional distress or that the contacts were nonconsensual.

The PPO is expansive, incorporating additional elements beyond the statutory-based contact specifically enumerated. MCL 600.2950a(3) authorizes a court to "restrain or enjoin an individual" from engaging in the same prohibited forms of contact described in the PPO, which do not encompass the contact listed in MCL 750.411h(1)(e). Moreover, MCL 600.2950a(1) requires proof of stalking as a prerequisite to the issuance of a PPO—there is no similar requirement to prove a violation. Because the court had the authority to restrain the contact at issue and actually ordered respondent to refrain from the contact, the evidence that he engaged in the contact was sufficient to support his conviction. See, e.g., *In re Kabanuk*, 295 Mich App 252, 256-259; 813 NW2d 348 (2012).

In any event, respondent's contacts also met the statutory definition of stalking under MCL 750.411h. Respondent's act of sending text messages qualify as a course of conduct. See MCL 750.411h(1)(a). Although benign on their face, the messages were not related to the welfare of their child. Thus, respondent's text messages, which are a form of both telephone and electronic communication, exceeded the scope of petitioner's consent and qualify as unconsented

contacts. MCL 750.411h(1)(e)(*v*). Moreover, respondent's continued contacts gave "rise to a rebuttable presumption that the continuation of the course of conduct caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(4). And these unconsented contacts could constitute "harassment" under MCL 750.411h(1)(c). Respondent contends that his communications could not qualify as harassment under the stalking statute because they were either constitutionally protected speech or speech that served a legitimate purpose. But he cites no authority showing that the communications with petitioner beyond that which was permitted under the PPO qualify as protected free speech or speech serving a legitimate purpose, and thus has abandoned the argument. See *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 414; 809 NW2d 669 (2011).

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support respondent's conviction.

## III. PRIVATE PROSECUTION

Respondent next argues that the court violated his constitutional rights when it allowed petitioner's lawyer to prosecute him for criminal contempt. Under Michigan law, the party who procured a PPO may hire a lawyer to prosecute a criminal contempt arising from the violation of the PPO. MCL 764.15b(7); MCR 3.708(G). And this Court has already rejected a challenge to the constitutionality of these provisions under federal law. See *DeGeorge v Warheit*, 276 Mich App 587, 392-393; 741 NW2d 384 (2007). The trial court did not err by permitting petitioner's lawyer to prosecute the contempt.

## IV. CROSS-EXAMINATION

Respondent next argues that the court violated his right to confront his accuser and present a defense by limiting the scope of his cross-examination of petitioner. Specifically, he argues the trial court should have allowed him to question her on whether she made a false report to officers against respondent, whether she was motivated to pursue this matter in order to obtain full custody of the parties' child, whether his conduct actually frightened or harassed petitioner, and whether petitioner consented to the disputed communications. The trial court determined that these issues were not relevant. This Court reviews a trial court's decision to limit cross-examination for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). Whether the trial court deprived a criminal defendant of his or her right to present a complete defense is reviewed de novo. *Id*.

Although defendants in criminal actions have the constitutional right to confront the witnesses assailed against them, that right is not absolute. *Id*. at 473. "[T]he Constitution guarantees criminal defendants a *meaningful opportunity* to present a complete defense." *Id*. (quotation marks and citations omitted; emphasis added). "[A]n accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (quotation marks and citations omitted).

Respondent contends that evidence of petitioner's motivation and of her alleged false report were instrumental to show petitioner's character or bias. But he never contended at trial that this evidence was being offered to impeach petitioner's credibility. He only asserted that the evidence was admissible under MRE 404(b) to show petitioner's plan or scheme to deprive him of custody of their child. In such a context, the evidence was not relevant to show that he violated the PPO. Respondent also argues the evidence was necessary to show that he did not engage in stalking. As already addressed, the court was not required to find that respondent's conduct constituted "stalking." It is enough that he violated the PPO by engaging in contacts with petitioner that were expressly prohibited.

In any event, any possible error by the court is harmless because respondent's guilt was established through uncontested documentary evidence that was unrelated to petitioner's credibility. MCR 2.613(A).

## V. JUDICIAL BIAS

Finally, respondent claims he is entitled to a new trial because the presiding judge was biased. Whether the trial court judge should have disqualified herself from the case is a question of law reviewed de novo. *King*, 297 Mich App at 472. A trial judge may be disqualified where, in relevant part, the "judge is biased or prejudiced for or against a party or attorney," or where the "judge, based on objective and reasonable perceptions, has either" a serious "risk of actual bias impacting the due process rights of a party" or has "failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." MCR 2.003(C)(1). To establish bias or prejudice, a party "must overcome a heavy presumption of judicial impartiality." *Cain v Michigan Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). "[D]isqualification for bias is only constitutionally required in the most extreme cases." *Id.* at 498.

Respondent argues that the trial court judge should have disqualified herself because she was either biased against respondent or his lawyer, because her statements or conduct created the "objective and reasonable" perception that there was "a serious risk of actual bias impacting" respondent's due process rights. MCR 2.003(C)(1). Respondent relies heavily on the decision in *Caperton v Massey Coal Co, Inc*, 556 US 868; 129 S Ct 2252; 173 LEd2d 1208 (2009), but that decision is plainly inapplicable. In *Caperton*, the United States Supreme Court reversed a state supreme court decision based on the substantial probability of bias where the magistrate received a multimillion dollar campaign contribution from one of the parties. See *Caperton*, 556 US at 881-882, 887, 890. Noting that the result was extreme and based on the case's particulars, the *Caperton* Court cautioned that "most matters relating to judicial disqualification do not rise to a constitutional level." *Id.* at 876, 887. The facts of this case do not implicate the concerns addressed in *Caperton*.

Respondent takes issue with the court's alleged failure to take judicial notice, but does not identify what the court should have judicially noticed. It appears that he was referring to the court's decision to "ignore" language in the PPO regarding the reference to our stalking statutes. By doing so, he asserts, the court misapplied the law. But as addressed above, the court properly construed and enforced the provisions of the PPO. There is no merit to this argument. Nor is there merit to his assertion that the court violated the law by interfering with his right to confront

petitioner and to present a full defense. The court did not violate respondent's constitutional rights by prohibiting him from cross-examining petitioner on irrelevant matters. Similarly, because respondent waived any challenge to the issuance of the PPO, and because petitioner established her prima facie case, respondent's assertion of bias premised on the court's handling of these matters is meritless.

Respondent also contends that the court erred in denying his request to stay the judgment or set bond pending appeal. Our court rules confer on courts the discretion to grant or deny a stay or bond pending appeal. MCR 7.209(E). Thus, there is no entitlement under Michigan law to a stay pending appeal from a criminal action. And as respondent conceded, "there is no absolute federal constitutional right to bail pending appeal after a conviction in the state courts." *Brown v Wilmot*, 572 F2d 404, 405 (CA 2, 1978).

Respondent additionally argues that one of the judge's statements implied bias because it indicated that she would retaliate against respondent for challenging her decisions. But respondent took that statement out of context. When the full statement is read, it is clear that the court was admonishing respondent for violating the order, while also chastising both parties for not taking steps to get along with each other for the benefit of their child.

We further reject respondent's assertion that the court erred in awarding sanctions to petitioner, claiming that this decision violated his freedom to petition the court. There is no order imposing sanctions in the record. It is incumbent upon respondent to show his entitlement to relief.

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

-6-